**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| Joan K. Gonzalez, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | |
| | § | |
| Texas Health & Human Services | § | Case No. 5:13-cv-183-DAE |
| Commission, and Executive Commissioner | § | |
| Kyle Janek, M.D. and Director Kelly Ford, | § | |
| in their Official Capacities | § | |
| | § | |
| *Defendants*. | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GREG ABBOTT

Attorney General of Texas

DANIEL T. HODGE

First Assistant Attorney General

DAVID C. MATTAX

Deputy Attorney General for Defense Litigation

JAMES "BEAU" ECCLES

Chief, General Litigation Division

MARC RIETVELT

Assistant Attorney General

Texas Bar No. 24043892

General Litigation Division

Office of the Attorney General

P.O. Box 12548, Capitol Station

Austin, Texas 78711-2548

Phone (512) 463-2120

Fax (512) 320-0667

ATTORNEYS FOR DEFENDANTS

June 4, 2014

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................. 1

II.  SUMMARY OF THE ARGUMENT ................................................................................. 2

III. SUMMARY JUDGMENT EVIDENCE ........................................................................... 4

IV.  STATEMENT OF FACTS ............................................................................................... 4

   A.  Plaintiff Applied For and Is Hired As a Texas Works Advisor. ......................................... 5

   B.  Overtime Was Mandatory for Texas Works Advisors Due to Production Needs Which
       Were Exacerbated By Statutory Deadlines and an Ever-Increasing Number of Clients ..... 7

   C.  Plaintiff's Work Group Was Repeatedly Advised of Their Mandatory Overtime Shifts
       Based on Production Needs. ................................................................................................. 8

   D.  Plaintiff Leaves at the End of Her Shift With Health Problems and Takes Five Weeks Off
       of Work. ............................................................................................................................... 9

   E.  Plaintiff Makes a Request for Accommodation. ............................................................... 10

   F.  HHSC and Plaintiff Participate in a Nearly 3-Month-Long Interactive Process to Explore
       Possible Accommodations. ................................................................................................ 11

   G.  Plaintiff Had Trouble Meeting Her Production Goals Even During Her 8-Hour Shifts
       During the Interactive Process, and Her Performance As a Probationary Employee In
       Terms of Production and Accuracy Was "Marginal." ....................................................... 13

   H.  Plaintiff Is Terminated Based On her Failure to Perform the Essential Functions of the
       Job. ..................................................................................................................................... 14

V.   SUMMARY JUDGMENT STANDARD ........................................................................ 14

VI.  ARGUMENTS AND AUTHORITIES ........................................................................... 15

   A.  Plaintiff Cannot Prove That She Was a Qualified Individual With a Disability. ............. 15

       1.  Plaintiff Has Failed to Demonstrate That She Was "Disabled" Within the Meaning of
           Section 504 of the RA ................................................................................................. 15

           a.  Plaintiff Was Not Substantially Limited In Her Ability to Work Based On Her
              Restriction From Working Overtime. .................................................................. 16

           b.  Plaintiff Was Not Substantially Limited In Her Ability to Sit Based On Her
              Doctor's Order To Stand and Stretch or Walk Around Every Hour. .................... 18

       2.  Plaintiff Was Not a "Qualified Individual" Because She Could Not Perform An
           Essential Function of the Job Due to Her Inability to Work More Than 40 Hours Per
           Week As Needed .......................................................................................................... 19

   B.  Plaintiff Has Failed to Demonstrate That Defendants Failed To Reasonably
       Accommodate Plaintiff, or To Engage In The Interactive Process In Good Faith ........... 22

1. Plaintiff's Request for an Indefinite or Unlimited Exemption From Working Overtime Was Unreasonable As a Matter of Law. ...................................................................... 22

2. Plaintiff Has Not Shown That HHSC Failed to Reassign Her to a Vacant Position In the San Antonio Area That Did Not Require the Ability to Work Overtime. ............ 23

3. Plaintiff Has Not Shown That HHSC Failed to Participate in the Interactive Process in Good Faith. ..................................................................................................................... 25

C. Plaintiff Has Failed to Establish That Defendant Retaliated Against Her When It Denied Her Proposed Accommodation and Terminated Her Employment Because She Could Not Perform the Essential Functions of Her Job With or Without Reasonable Accommodation. ................................................................................................................... 26

D. Plaintiff Has Failed to Establish That Defendants Retaliated Against Her Based on the Failure to Re-hire Her for Positions for Which She Has Submitted Various Online Applications. ......................................................................................................................... 27

VII. CONCLUSION.................................................................................................................. 29

# TABLE OF AUTHORITIES

**Cases** .................................................................................................................... **Page(s)**

*Baker v. AVI Foodsystems, Inc.,*
2011 WL 6740544, *10 (W.D.N.Y. 2011) ......................................................... 3, 20

*Berg v. Norand Corp.,*
169 F.3d 1140 (8th Cir. 1999) ................................................................................ 17

*Bialko v. Quaker Oats Co.,*
434 Fed. Appx. 139, 142 (3rd Cir. 2011) ............................................................... 16

*Bleak v. Providence Health Ctr.,*
454 Fed. Appx. 366, 369 (5th Cir. 2011) ............................................................... 16

*Boitnott v. Corning, Inc.,*
669 F.3d 172, 175 (4th Cir. 2012) .......................................................................... 16

*Bradley v. Univ. of Tex. M.D. Anderson,*
3 F.3d 922 (5th Cir. 1993) ................................................................................. 3, 23

*Bratten v. SSI Servs., Inc.,*
185 F.3d 625 (6th Cir. 1999) .................................................................................. 23

*Brennan v. Nat'l Tel. Directory Corp.,*
850 F.Supp. 331 (E.D. Pa. 1994) ........................................................................... 17

*Calderon v. Potter,*
113 Fed. Appx. 586 (5th Cir. 2004) ....................................................................... 26

*Colwell v. Suffolk County Police Dep't.,*
158 F.3d 635 (2nd Cir. 1998) ................................................................................. 18

*Cotter v. Ajilon Servs., Inc.,*
287 F.3d 593, 598-99 (6th Cir. 2002) .................................................................... 16

*Davis v. Florida Power & Light Co.,*
205 F.3d 1301 (11th Cir. 2000) ..................................................................... 3, 19, 20

*Dupre v. Charter Behavioral Health Sys. of Lafayette,*
242 F.3d 610 (5th Cir. 2001) ............................................................................. 3, 18

*Dutcher v. Ingalls Shipbuilding,*
53 F.3d 723, 727 (5th Cir. 1995) ........................................................................... 16

*EEOC v. AT&T Mobility Servs.,*
2011 WL 6309449, *9 (E.D. Mich. 2011) .............................................................. 23

*EEOC v. Picture People, Inc.,*
684 F.3d 981 (10th Cir. 2012) ................................................................................ 19

*Hall v. U.S. Postal Serv.,*
857 F.2d 1073 (6th Cir. 1988) ........................................................................... 3, 23

*Hatcher v. Philander Smith Coll.*,
   251 F.3d 670 (8th Cir. 2001) .......................................................... 4, 26

*Hawkins v. PepsiCo, Inc.*,
   203 F.3d 274 (4th Cir. 2000) ............................................................ 26

*Hoskins v. Oakland County Sheriff's Dep't*,
   227 F.3d 719 (6th Cir. 2000) .......................................................... 3, 23

*Jackson v. Veterans Admin.*,
   22 F.3d 277 (11th Cir.) ...................................................................... 21

*Jakubowski v. The Christ Hosp.*,
   627 F.3d 195 (6th Cir. 2011) ...................................................... 4, 24, 25

*Jovanovic v. In-Sinc-Erator Div. of Ermeson Elec. Co.*,
   201 F.3d 894 (7th Cir. 2000) .............................................................. 20

*Keith v. Cnty. of Oakland*,
   703 F.3d 918 (6th Cir. 2013) .............................................................. 24

*Kellogg v. Union Pac. R.R. Co.*,
   233 F.3d 1083 (8th Cir. 2000) .......................................................... 17

*Kramer v. Tosco Corp.*,
   233 Fed. Appx. 593 (9th Cir. 2007) .................................................... 22

*McDonough v. Donahoe*,
   673 F.3d 41 (1st Cir. 2012) ................................................................ 18

*Miller v. Southwestern Bell Tel. Co.*,
   51 Fed. Appx. 928, at *5 (5th Cir. 2002) .......................................... 2, 16

*Monette v. Elec. Data Sys. Corp.*,
   90 F.3d 1173 (6th Cir. 1996) ...................................................... 3, 23, 25

*Mora v. Univ. of Tex. Southwestern Med. Ctr.*,
   469 Fed.Appx. 295, 297 (5th Cir. 2012) ............................................ 16

*Morgan v. Hilti, Inc.*
   108 F.3d 1319 (10th Cir. 1997) .......................................................... 28

*Parkinson v. Anne Arundel Med. Ctr.*,
   214 F.Supp.2d 511 (D.Md. 2002) ...................................................... 17

*Patterson v. City of Seattle*,
   97 F.3d 1460 (9th Cir. 1996) ........................................................... 4, 26

*Rehrs v. The Iams Co.*,
   486 F.3d 353 (8th Cir. 2007) ............................................................ 19

*Rivera v. City & Cty. Of Denver*,
   365 F.3d 912 (10th Cir. 2004) ............................................................ 26

*Rodal v. Anesthesia Group of Onondaga*,

369 F.3d 113 (2nd Cir. 2004) ................................................................................. 20

*Roth v. Lutheran Gen. Hosp.,*
57 F.3d 1446 (7th Cir. 1995) ............................................................................... 17

*Shannon v. New York City Transit Auth.,*
332 F.3d 95, 99 (2nd Cir. 2003) ..................................................................... 19, 22

*Sutton v. United Air Lines, Inc.,*
527 U.S. 471, 491 (1999) ...................................................................................... 15

*Tardie v. Rehab. Hosp. of Rhode Island,*
168 F.3d 538 (1st Cir. 1999) ........................................................... 3, 17, 20, 21

*Taylor v. Nimock's Oil Co.,*
214 F.3d 957 (8th Cir. 2000) .......................................................................... 17, 18

*Taylor v. Pathmark Stores, Inc.,*
177 F.3d 180 (3rd Cir. 1999) ............................................................................... 18

*Tyndall v. Nat'l Educ. Ctrs., Inc.,*
31 F.3d 209 (4th Cir. 1994) .................................................................................. 20

## Statutes

29 C.F.R. § 1630.2(a)(3) ......................................................................................... 24
29 C.F.R. § 1630.2(n)(3) ......................................................................................... 20
29 CFR § 1630.2(j)(1) ......................................................................................... 3, 17
41 C.F.R. § 60-741.2(i) ........................................................................................... 20
41 C.F.R. § 60-741.2(z) ........................................................................................... 15
42 U.S.C. § 12111(8) ............................................................................................... 19
42 U.S.C.A. § 12102 ............................................................................................... 16

## Rules

Fed. R. Civ. P. 56(c) ............................................................................................... 14

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| Joan K. Gonzalez, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | |
| | § | |
| Texas Health & Human Services | § | Case No. 5:13-cv-183-DAE |
| Commission, and Executive Commissioner | § | |
| Kyle Janek, M.D. and Director Kelly Ford, | § | |
| in their Official Capacities | § | |
| | § | |
| *Defendants*. | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, the Texas Health and Human Services Commission, and Executive Commissioner Kyle Janek, M.D. and Director Kelly Ford, in their Official Capacities ("Defendants") file this Motion for Summary Judgment, and would respectfully show the Court as follows:

## I.  INTRODUCTION

On March 8, 2013, Plaintiff Joan Gonzalez filed a lawsuit in this Court against Defendants the Texas Health And Human Services Commission and Executive Commissioner Kyle Janek, M.D., and Director Kelly Ford, in their official capacities, alleging claims of disability discrimination based on failure to provide reasonable accommodation and retaliation under the Americans With Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA").   [Pl's Orig. Compl., Dkt. #1].   In particular, Plaintiff alleges that at some point during her employment with the Health and Human Services Commission ("HHSC"), she was diagnosed with a pulmonary embolism and deep vein thrombosis.  [Id. at ¶7]. Plaintiff further alleges that, following her medical diagnosis, she was denied reasonable accommodations, and instead was

discharged on October 17, 2011. [Id. at ¶8]. In addition, Plaintiff complains that, following her termination, she has applied for other positions at HHSC but has not been re-hired. [Id. at ¶9]. Plaintiff complains that each of these alleged actions—(1) failure to provide reasonable accommodation, (2) termination, and (3) subsequent refusal to re-hire—constitute unlawful disability discrimination. [Id. at ¶¶11-16].

On April 8, 2013, Defendants filed a motion to dismiss Plaintiff's claims under Title II of the ADA and the Texas Commission on Human Rights Act ("TCHRA"). [Mot. to Dismiss, Dkt. #4]. On October 16, 2013, this Court granted Defendants' motion to dismiss based on Plaintiff's representation "agreeing to the dismissal of her Title II claims and confirming that she brings no claims under the Texas Commission on Human Rights Act." [Ord. Granting Mot. to Dismiss, Dkt. #15].

The only remaining claims in this lawsuit are for disability discrimination and retaliation under Section 504 of the Rehabilitation Act of 1973 ("RA"). As more fully briefed below, Plaintiff has failed to establish that she was a qualified individual with a disability because the ability to work overtime in order to meet business needs was an essential function of Plaintiff's job as a Texas Work's Advisor in the Women's Health Program during her period of employment, and that there is no genuine issue of material fact regarding each of Plaintiff's claims that Defendants violated Section 504 of the RA. The case has proceeded through discovery and now is ripe for adjudication on summary judgment.

## II. SUMMARY OF THE ARGUMENT

1.   Plaintiff was not disabled under the meaning of Section 504 of the RA based on her doctor's orders not to work overtime hours, and to stand and stretch or walk around every hour. The Fifth Circuit has held that the inability to work overtime is not a substantial limitation on the ability to work under the ADA. *See Miller v. Southwestern Bell Tel. Co.,* 51 Fed. Appx. 928 (5th Cir. 2002). Similarly, Plaintiff has failed to demonstrate that

her condition, which required that she stand and stretch or walk around every hour, substantially limited her in the major life activity of "sitting" as compared to most people in the general population. *See* 29 CFR § 1630.2(j)(1); *Dupre v. Charter Behavioral Health Sys. of Lafayette*, 242 F.3d 610 (5th Cir. 2001) (holding that Plaintiff not substantially limited in the major life activities of sitting when Plaintiff's limitations in sitting required her to get up every hour and walk around).

2.  Plaintiff has failed to establish she was a "qualified individual with a disability" because the ability to work overtime in order to ensure that daily tasks were completed and that benefits were timely and accurately administered to the clients was an essential function of Plaintiff's job as a Texas Work's Advisor in the Women's Health Program. Where the demands of the job require working overtime on a regular basis, courts have recognized repeatedly that overtime constitutes an essential function of the job. *See, e.g., Davis v. Florida Power & Light Co.,* 205 F.3d 1301, 1305-06 (11th Cir. 2000); *Tardie v. Rehabilitation Hosp. of Rhode Island*, 168 F.3d 538, 544 (1st Cir. 1999); *Baker v. AVI Foodsystems, Inc.,* 2011 WL 6740544, *10 (W.D.N.Y. 2011). Moreover, because overtime was the tool that got the work done, it was akin to job presence, which repeatedly has been held to be an essential function of a job. *See Davis,* 205 F.3d at 1306 (finding that overtime work for the position of reconnecting electrical service was "akin to job presence" and, as such, was an essential function of the position).

3.  Plaintiff has failed to demonstrate that Defendant failed to reasonably accommodate Plaintiff when it denied her request for an indefinite or unlimited exemption from working overtime hours at any time, without providing any clarification or estimated duration for the hourly restrictions based on a "lifelong" condition. The law is clear that an accommodation that eliminates an essential function of the job is unreasonable. *See Bradley v. Univ. of Tex. M.D. Anderson,* 3 F.3d 922, 925 (5th Cir. 1993) (holding that "[s]uch redefinition exceeds reasonable accommodation"); *Hall v. U.S. Postal Serv.,* 857 F.2d 1073, 1078 (6th Cir. 1988). Moreover, the accommodation sought by Plaintiff would have required Defendants to hire additional personnel or shift responsibility to existing personnel in order to handle Plaintiff's case load that was in excess of her 40-hour work week, which is unreasonable as a matter of law and would have imposed an undue burden on the employer. *Hoskins v. Oakland County Sheriff's Dep't,* 227 F.3d 719, 726 (6th Cir. 2000) ("the ADA does not require employers to accommodate individuals by shifting an essential job function unto others").

4.  Plaintiff has failed to demonstrate that Defendant failed to reasonably accommodate Plaintiff when it did not reassign her to a vacant position in the San Antonio area that did not require the ability to work overtime. Plaintiff has not satisfied her burden to show that such positions existed and were vacant at the time her employment was terminated. *See Jenkins v. Cleco Power,* 487 F.3d 309, 315 (5th Cir. 2007) ("For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant. Under the ADA, an employer is not required to give what it does not have"); *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996); *Munoz v. Seton*

*HealthCare,* 2013 WL 1293425, *9 (W.D. Tex. 2013). Merely alleging that Defendants must have had some equivalent position for Plaintiff to fill is not sufficient. *Id.*

5.  Plaintiff has failed to demonstrate that Defendant did not participate in the interactive process in good faith when the Civil Rights Office engaged with Plaintiff, HHSC management, and the human resources department in an almost 3-month-long effort to determine whether Plaintiff's overtime restriction could be accommodated, or Plaintiff could be reassigned to a vacant position that did not require overtime. *See Jakubowski v. The Christ Hosp.*, 627 F.3d 195, 202 (6th Cir. 2011) ("An employer has sufficiently acted in good faith when it readily meets with the employee, discusses any reasonable accommodations, and suggests other possible positions for the plaintiff").

6.  Plaintiff has failed to establish that Defendant retaliated against her when it terminated her employment because she could not perform the essential functions of her job with or without reasonable accommodation. As discussed above, Defendants had a legitimate, non-retaliatory reason for the denial of the requested indefinite or unlimited exemption from overtime and the termination of Plaintiff's employment, and Plaintiff cannot show any evidence of pretext. *See Patterson v. City of Seattle,* 97 F.3d 1460 (9th Cir. 1996) (holding that retaliation claims that allege "nothing more than variations on . . . failure to accommodate claim [are] without merit"); *Hatcher v. Philander Smith Coll.,* 251 F.3d 670, 676 (8th Cir. 2001) (holding that retaliation claim failed where no evidence plaintiff "was terminated for any reason other than her inability to perform the essential functions . . . with or without reasonable accommodation).

7.  Plaintiff has failed to establish that Defendant retaliated against her based on the failure to re-hire her for positions for which she submitted online applications.

## III.  SUMMARY JUDGMENT EVIDENCE

The evidence upon which Defendants rely to support their motion for summary judgment is included in the Appendix, filed concurrently but as a separate document, with Defendants' motion.[1] Defendants incorporate into their motion by reference the attachments contained in the Appendix.

## IV.  STATEMENT OF FACTS

Plaintiff Joan Gonzalez is a former employee of the Defendant Texas Health and Human Services Commission ("HHSC"). Plaintiff was hired as a Texas Works Advisor (TWA) on

---

[1] Defendants have filed the entire Appendix under seal in support of the Motion for Summary Judgment, in an abundance of caution, given the fact there are documents and deposition testimony referencing and discussing

January 24, 2011.  [Ex. CC, McNiel Decl. ¶4; Ex. EE, Welch Decl. ¶4].  The TWA is a position in which the employee interviews clients, reviews documentation, and determines eligibility for various social services and benefits, which may include Temporary Assistance for Needy Families (TANF), Food Stamps, Medicaid, Women's Health Program benefits.  During her period of employment, Plaintiff's immediate supervisor was Rex McNiel, and her second-line supervisor was Kasia ("KK") Welch.  [Ex. EE, Welch Decl. ¶5].  Plaintiff was terminated while still a probationary employee on October 17, 2011.  [Id. at ¶10; Ex. B, Welch Dep 30:19-20].

A.    **Plaintiff Applied For and Is Hired As a Texas Works Advisor.**

On December 5, 2010, Plaintiff submitted an application with HHSC to be a Texas Works Advisor (TWA).  [Ex. G, Pl's Application].  The job posting for the TWA position stated that the position would be located in the Customer Care Center department, and that:  "The Customer Care Center hours of operation are from Monday-Friday 8am-8pm. Employee *may be required to work overtime* and rotating shifts: 8:00a-5:00p, 9:00a-6:00p, 10:00a-7:00p and 11:00a-8:00p." [Ex. F, Job Posting (emphasis added)].  In her application, Plaintiff specifically answered "yes" to this question:  "Are you willing to work hours other than 8 to 5?"  [Ex. G, Pl's Application]. Based on her application, Plaintiff was part of a group of applicants selected for an interview to potentially fill the TWA vacancies.  [Ex. KK, Cintron Decl. ¶4].

On December 29, 2010, an orientation was conducted for the group of TWA job candidates, including Plaintiff, before they interviewed.  [Id.].  During this orientation session, Plaintiff and the other candidates were informed that overtime would be expected in order to meet the business needs of the agency.  [Id.].  After the orientation session, the candidates were interviewed by hiring supervisors.  [Id.].  All candidates interviewed for the vacant TWA

Plaintiff's medical condition.

position were also informed during their individual interviews that working in excess of 40 hours per week was a requirement of the position based on the business needs of HHSC which was receiving an ever increasing number of applications for benefits and working hard to resolve a backlog of work that had developed by 2010. [Id.]. During this time, the requirement and expectation that all TWAs had to work overtime as needed simply was referred to as the "work hours expectation." [Id.]. Following her individual interview, Plaintiff was offered and accepted the position of TWA. [Id.].

Plaintiff worked in the HHSC Office of Eligibility Services ("OES") and was assigned to Unit 27 to serve as a TWA for Women's Health Program. [Ex. CC, McNiel Decl. ¶3]. The Women's Health Program provides Medicaid and other important benefits to low-income women, including family planning exams, counseling and education services, treatment of certain sexually transmitted diseases, health screenings, and birth control. [Id.]. A woman can apply for these benefits by submitting an application to the program. [Id.]. TWAs are charged with the duty to review, process, and close these applications for benefits. [Id.]. The effectiveness of the Women's Health Program depends on the ability of the TWAs to process and close these applications timely and accurately, in order to ensure that these important benefits are received by customers when they need them. [Id.].

As a new employee, Plaintiff was appointed to a regular position to initially serve a probationary period. [Ex. H, HHSC Policy Ch. 3 regarding General Employment; Ex. EE, Welch Decl. ¶4]. This probationary period is the period immediately after hiring during which the employee's behaviors and job performance are observed to determine fitness for continued employment in the job. [Id.].

Shortly after her hire, Plaintiff attended an initial on-boarding conference and then attended various training sessions from February 7, 2011 to April 13, 2011. [Ex. A, Pl's Dep]. Plaintiff's first day to begin working on necessary daily tasks for the job was April 14, 2011. [Id.].

**B.**    **Overtime Was Mandatory for Texas Works Advisors Due to Production Needs Which Were Exacerbated By Statutory Deadlines and an Ever-Increasing Number of Clients.**

By all accounts, the TWA position is a very demanding job. [Ex. A, Pl's Dep; Ex. EE, Welch Decl. ¶6; Ex. CC, McNiel Decl. ¶5; Ex. KK, Cintron Decl. ¶5]. The benefits that are administered by each of the programs are extremely important, and the amount of work required for the position is directly related to the ever-increasing number of clients and applications for benefits to each of the programs. [Id.]. Each TWA has to perform certain assigned tasks every day, which are needed to process applications for benefits and any changes to those applications. [Id.]. It is essential to the TWA job that daily tasks are to be completed each day and that eligibility is determined in both a timely and accurate fashion, in order to distribute benefits to the clients. [Id.]. In order to complete the necessary on-going work, the ability to work overtime has always been required of TWAs. [Ex. EE, Moser Decl. ¶4].

Furthermore, during the Plaintiff's period of employment in 2011, several factors necessitated the ability of TWAs to work even more overtime hours than usual to meet the production needs for the programs. [Ex. JJ, Ford Decl. ¶5]. First, beginning in 2010, there was a large backlog of applications, renewals, and changes pending, and the number of applicants was increasing. [Id.]. Applications for benefits, and the volume of work for the TWAs, clerks, and

supervisors further increased in 2011. [Id.]. This impacted all TWAs in OES, including those in the Women's Health Program.[2] [Id.].

In addition, the Women's Health Program was subject to federal and state laws which placed strict time limits within which applications for benefits had to be processed.[3] [Ex. JJ, Ford Decl ¶6]. These requirements had to be strictly followed by the agency and were subject to financial penalties by the federal government for non-compliance. [Id.]. Consequently, all TWAs in the Women's Health Program were required to work mandatory overtime shifts on a weekly basis during the period of Plaintiff's employment. [Id.]. And, in fact, all TWAs and other field operations staff had to be available to work overtime during that same time frame in order to keep up with the ever-increasing number of clients and applications for benefits to each of the various programs. [Id.].

## C.   Plaintiff's Work Group Was Repeatedly Advised of Their Mandatory Overtime Shifts Based on Production Needs.

Beginning in 2011, the mandatory overtime schedule for TWAs in the Women's Health Program was Monday, Tuesday, and Wednesday from 8:00am until 8:00pm, and one Saturday per month. [Ex. CC, McNiel Decl ¶7; Ex. A, Pl's Dep; Ex. I, Email from Welch to Supervisors, 5/9/11-5/10/11; Ex. Email from McNiel to Team, 6/3/11; Ex. K, Email from Trevino to Team, 6/22/11]. The only "voluntary" overtime was on Thursdays and Fridays and any other Saturdays

---

[2] In addition, the recession had severely impacted all state operations and resulted in deep budget cuts that affected all state government agencies, including HHSC. The Texas State Legislature operates on a biennial cycle, and the Texas state budget for 2010-2011 was signed into law on June 19, 2009, and spent approximately $1.6 billion less in general revenue than the previous biennium.

[3] The statutory processing deadlines can be found in the Texas Administrative Code. 1 TAC §372.3 describes the federal and state law basis for the TANF and SNAP programs. *See also* 1 TAC §372.9049(a) (mandating a 45 day deadline for processing TANF applications); 1 TAC §372,3 (b) (mandating a 30 day deadline for processing SNAP applications). After June 2012, the rules for TWHP provide that DSHS or its designee must process a TWHP application by the 45th day after the date it receives the application. *See* 25 TAC §39.35.

on which the office was open.[4]  [Ex. CC, McNiel Decl ¶7; Ex. J, Email from McNiel to Team]. Overtime depended on the production needs of the division, and all employees were expected to participate.  [Id.].  No employees were permanently exempted from the requirement to be available to work overtime as needed. [Id.].  Plaintiff was fully aware of and participated in these mandatory overtime hours.  [Id.].

Plaintiff's work group had certain goals it needed to achieve every day in terms of production.  [Ex. CC, McNiel Decl ¶8].  At the beginning of each day, Mr. McNiel assigned a set number of tasks to each employee in the work group in order to achieve the group's goals for that day.  [Id.].  These group production goals were dictated by the statutory deadlines and production needs for the Women's Health Program.  [Id.].  Because of the nature of the benefits and the deadlines for the work, if someone did not show up for work, the other TWAs would have to pick up the slack and perform more work in order to complete the required number of tasks. [Id.].

## D.  Plaintiff Leaves at the End of Her Shift With Health Problems and Takes Five Weeks Off of Work.

On June 9, 2011—less than two months after she completed her training and began working at the job—Plaintiff reportedly experienced shortness of breath, sweating, and pain in her right lung toward the end of her scheduled shift.  [Ex. E, Accident/Incident Investigation Report].  Plaintiff states that, "[t]hese symptoms continued until I was too ill to stay the required number of hours requested by our manager, KK Welch, on June 10, 2011." [Id.].  That evening, Plaintiff left the office approximately one hour early at 7:00pm.  [Id.].  Based on her condition, Plaintiff took leave from work for five weeks from June 10, 2011, to July 14, 2011.  [Id.].

---

[4] For example, on April 26, 2011, McNiel sent an email to his group informing them that:  "Due to low production and TIERS issues, there is a possibility of overtime Thursday & Friday.  Please make necessary

Plaintiff stated that she believed her condition was "caused mostly by sitting for long periods of time and stress related to the job." [Id.].

**E.      Plaintiff Makes a Request for Accommodation.**

During her period of leave, Mr. McNiel expressed concern for Plaintiff and informed her that under HR policy she might be eligible for FMLA, Extended Sick Leave, or Sick Leave Pool benefits. [Ex. M, Letter from McNiel to Gonzalez, 6/23/11]. He further advised Plaintiff: "In addition, should you have a condition which you believe requires a reasonably accommodation, you may contact the HHS Civil Rights Office (CRO) for additional information and assistance; the CRO number is (512) 438-4313. The Reasonable Accommodation Request Form, HR 1602, for making such a request is also attached." [Id.].

About two weeks later, on July 11, 2011, Plaintiff submitted a Fitness for Duty Certification and a Reasonable Accommodation (RA) Request. [Ex. N, Fitness for Duty Cert; Ex. O, RA Request]. In her RA request, Plaintiff requested the following accommodations: "maximum work of 8 hours/day with hourly breaks to ambulate (10 minute walk)." [Id.]. Later, in support of her RA request, Plaintiff submitted physician documentation stating that she had been diagnosed with bilateral pulmonary embolism and lower extremity deep vein thrombosis. [Ex. P, Physician Documentation, signed by Dr. Palley 7/20/11]. In the section regarding requested accommodation, her doctor stated that Plaintiff "must be able to take 10 minute breaks every hour to ambulate and decrease risk of clots." [Id.]. In the section in entitled "Probable Duration of Serious Health Condition," Plaintiff's doctor entered: "Life Long." [Id.]. Plaintiff returned to work on July 15, 2011.

arrangements." [Ex. L, Email from McNiel to Team, 4/26/11].

**F.    HHSC and Plaintiff Participate in a Nearly 3-Month-Long Interactive Process to Explore Possible Accommodations.**

Dionicio Garcia, a specialist in the Civil Rights Office, was Plaintiff's primary point of contact for the purposes of the interactive process on her RA request.  [Ex. II, Garcia Decl. ¶3; Ex. D, Garcia Dep; Ex. Q, Garcia Case  Activity Log].  Mr. Garcia acted as a liaison between the Plaintiff, HHSC management, and the human resources department during the process.  [Id.].  When Plaintiff returned to work, following her RA request, Plaintiff's overtime was temporarily suspended and she was permitted to take breaks every hour as requested during the interactive process period.  In addition, Plaintiff's supervisors, McNiel and Welch, both expressed the likelihood of accommodating at least some of Plaintiff's RA request.  [Ex. II, Garcia Decl. ¶4].

During the course of the interactive process, however, management informed Mr. Garcia that, while her restriction from working more than 8 hours per day would be approved, the ability to work in excess of 40 hours per week as needed was essential to the job.  [Id. at ¶5; Ex. EE, Welch Decl. ¶10].  In particular, management expressed concern that the necessary work could not be completed without the ability of all TWAs to work in excess of 40 hours per week due to the production needs of the department as well as the needs of the clients.  [Id.].  Moreover, Mr. Garcia was informed that other workers would be forced to complete Plaintiff's work if she could not work in excess of 40 hours per week.  [Id.].

As a result, in August 2011, Mr. Garcia engaged in an interactive dialogue with Plaintiff as to whether her doctor's restriction of "maximum work of 8 hours/day" would still permit her to be available to work overtime on Saturdays when needed.  [Id.; Ex. Q, Garcia Case  Activity Log].  Plaintiff stated that she would ask her doctor.  Plaintiff later informed Mr. Garcia that her doctor would not permit her to work any additional time on Saturdays.  [Id.].

In September 2011, Plaintiff for the first time requested a transfer to another position as part of her RA request. [Ex. S, Email from Gonzalez to Garcia, 9/15/11; Ex. T, Email from Gonzalez to Garcia, 9/15/11; Ex. Q, Garcia Case Activity Log]. Plaintiff was provided with paperwork to fill out and suggest positions that were vacant for transfer. Plaintiff indicated that her desired location was: "Shertz, Salado Creek, on Nacogdoches." [Ex. R, Pl's Transfer Request]. By email, Plaintiff submitted a list of seven jobs that were available at the University of Texas Health Sciences Center,[5] and stated, "I would be willing to accept any of these positions." [Ex. S, Email from Gonzalez to Garcia re: RA request, 9/15/11]. Plaintiff later submitted a request for a position with the Department of Aging and Disability Services. [Ex. U, Email from Gonzalez to McNiel re: transfer request, 10/5/11].

Mr. Garcia also spoke with a Human Resources representative regarding whether there were any available positions in the San Antonio area for reassignment. [Ex. II, Garcia Decl. ¶6; Ex. HH, Bennett Decl. ¶3]. Plaintiff had further indicated she would be willing to consider a clerical position, so long as the position was in the requested geographical area. [Id.]. Human Resources reviewed all vacant positions in the San Antonio area but determined that all were field positions which did not guarantee a 40-hour work week and required overtime as needed. [Id.]. Human Resources also looked at whether any clerical positions were available, as these positions did not require overtime. [Id.]. However, no such positions were vacant in the San Antonio area at the time of Plaintiff's RA request. [Id.].

As a result, Mr. Garcia asked if Plaintiff would be willing to consider any positions outside the general San Antonio geographical area. [Ex. II, Garcia Decl. ¶6]. Plaintiff informed Mr. Garcia that she was not willing to do so. [Id.].

---

[5] The University of Texas Health Sciences Center is a wholly separate entity from HHSC.

## G.     Plaintiff Had Trouble Meeting Her Production Goals Even During Her 8-Hour Shifts During the Interactive Process, and Her Performance As a Probationary Employee In Terms of Production and Accuracy Was "Marginal."

During the interactive process period, even with her temporary accommodations, Plaintiff had trouble meeting the production goals required for her regular 8-hour shifts.  Plaintiff could not consistently meet performance expectations concerning the quantity and accuracy of her work.[6]  [Ex. EE, Welch Decl. ¶11].  On August 1, 2011, Plaintiff received coaching from her work group lead regarding accuracy errors which were discovered during a regular audit of her work.  [Ex. V, Email from Pool to Gonzalez, 8/1/11].  On August 5, 2011, Mr. McNiel issued her a memorandum noting that she had failed to attain the goal of 175 tasks (i.e., closure of an application or change order).  [Ex. W, Production Memorandum, 8/5/11].  Furthermore, in her only performance evaluation she received during her period of employment at HHSC, Plaintiff received "needs some improvement" ratings in several performance measures.  [Ex. X, Performance Eval].  In her evaluation, Mr. McNiel tried to encourage Plaintiff, but also noted that:  "Ms. Gonzalez' goals have been increased to meet business needs for an employee with her tenure.  She needs to continue to learn policy and procedures and apply them properly to increase her production."  [Id.].  After having her production goals increased to 40 per day to match her tenure, however, Plaintiff struggled with work attendance and often failed to meet her production goals even when she was able to work a full 8-hour shift.[7]

---

[6] Mr. McNiel testified at deposition that Plaintiff's performance as a probationary employee in terms of production and accuracy was "marginal."

[7] In a memorandum from McNiel to Gonzalez regarding her 6 month review and New Goals, dated 9/16/11, McNiel stated:  "Considering your tenure and continued progress, I am increasing your daily goals from 20 per 8-hour day to 40 per 8-hour day effective Sep 19, 2011.  As you are currently limited to working only 8-hour days, there is no requirement to set goals for the Unit's 11-hour days.  You will be required to complete 20 tasks by 12pm and 40 by 5pm each day."  [Ex. Z, Memorandum re: New Production Goals, 9/16/11].  Plaintiff only met her production goal five out of the ten days she worked full 8-hour shifts from September 19, 2011, to October 6, 2011. [Ex. Y, Email from Rodriguez to McNiel re: Daily Numbers, 10/7/11].

**H.** **Plaintiff Is Terminated Based on Her Failure to Perform the Essential Functions of the Job.**

On October 6, 2011, after almost three months of engaging in an interactive process, Mr. Garcia sent an email to Gonzalez regarding the closure of her RA request. [Ex. AA, Reasonable Accommodation Closure; Ex. II, Garcia Decl. ¶8]. Attached to his email was a Reasonable Accommodation Closure Memorandum that stated: "CRO has determined that you do not meet the definition of a qualified individual with a disability in accordance with HHS policy under the ADA of 1990, as amended." [Id.]. Thereafter, Ms. Welch requested dismissal because Plaintiff could not perform the mandatory overtime required to complete the necessary work for her position, and as a result, Plaintiff's work needed to be done by other workers in the her unit. [Ex. EE, Welch Decl. ¶11; Ex. JJ, Ford Decl. ¶8]. On October 17, 2011, Plaintiff was terminated from her position as a TWA. [Ex. BB, Termination Letter, 10/17/11].

## V. SUMMARY JUDGMENT STANDARD

Rule 56 requires the court to grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In a motion for summary judgment, "[t]he moving party bears the initial burden of showing that there is no genuine issue for trial; it may do so by 'point[ing] out the absence of evidence supporting the nonmoving party's case.'" *Nat'l Ass'n of Gov't Emps. V. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994); *Celotex*, 477 U.S. at 323. Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party defending against the motion for summary judgment cannot defeat the motion unless she provides specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Id.* at 248-50. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to her case, and on which she bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## VI. ARGUMENTS AND AUTHORITIES

### A. <u>Plaintiff Cannot Prove That She Was a Qualified Individual With a Disability.</u>

#### 1. Plaintiff Has Failed to Demonstrate That She Was "Disabled" Within the Meaning of Section 504 of the RA.

This Court should grant summary judgment because Plaintiff has not shown that she suffered from a qualifying disability during her employment. While the ADA Amendments Act of 2008 ("ADAAA") amended the ADA to favor broad coverage, it did not eliminate the Plaintiff's burden to prove that she is a qualified individual with a disability. Here, Plaintiff alleges she became disabled when she was diagnosed with a pulmonary embolism and deep vein thrombosis, for which her doctor imposed restrictions that included, "not being able to work more than 8 hours per day and limiting her ability to sit for long periods of time without getting up and walking around." [Dkt. #1, Pl's Orig. Compl., ¶7; Ex. , Pl's Responses to Interrogatories, No. 1]. Defendants do not dispute whether Plaintiff suffered from an impairment, but the evidence does not demonstrate that this impairment substantially limited her ability to work or to sit compared to most people in the general population. *See* 41 C.F.R. § 60-741.2(z).

### a. Plaintiff Was Not Substantially Limited In Her Ability to Work Based On Her Restriction From Working Overtime.

Plaintiff has failed to show that her inability to work overtime presents a substantial limitation on her ability to work. An individual is substantially limited in the major life activity of working, if the impairment precludes him from work in a broad class of jobs, or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491 (1999) ("When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs"), *superseded by statute on other grounds,* 42 U.S.C.A. § 12102[8]; *see also Mora v. Univ. of Tex. Southwestern Med. Ctr.,* 469 Fed.Appx. 295, 297 (5th Cir. 2012). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 727 (5th Cir. 1995); *see also Bleak v. Providence Health Ctr.,* 454 Fed. Appx. 366, 369 (5th Cir. 2011) (holding that "[a]n individual is not substantially limited in the major life activity of working if other jobs utilizing the individual's skills are available").

The Fifth Circuit has held that the inability to work overtime is not a substantial limitation on the ability to work under the ADA. *See Miller v. Southwestern Bell Tel. Co.,* 51 Fed. Appx. 928, at *5 (5th Cir. 2002) ("When evaluating the traditional forty-hour work week, courts have determined that the inability to work overtime is not a substantial limitation on the ability to work under the ADA"). In addition, other federal circuit courts which have addressed

---

[8] The ADAAA specifically includes "working" in the list of "major life activities." Despite the amendment of the ADA and the omission of "working" from the text of the revised regulations, a plaintiff seeking to demonstrate that an impairment substantially limits him or her in working still must do so by showing that the impairment "substantially limits his or her ability to perform a class of jobs or broad range of jobs in in various classes as compared to most people having comparable training, skills, and abilities." *See* 29 C.F.R. Pt. 1630, App., "Substantially Limited in Working."

this issue have reached the same conclusion. *See Bialko v. Quaker Oats Co.,* 434 Fed. Appx. 139, 142 (3rd Cir. 2011) (holding that an employee is not substantially limited if he or she can handle a forty hour work week but is incapable of performing overtime due to an impairment); *Boitnott v. Corning, Inc.*, 669 F.3d 172, 175 (4th Cir. 2012) (joining the "overwhelming and uniform authority from numerous sister circuits" in holding that "an inability to work overtime does not constitute a 'substantial' limitation on a major life activity under the ADA"); *Cotter v. Ajilon Servs., Inc.,* 287 F.3d 593, 598-99 (6th Cir. 2002); *Roth v. Lutheran Gen. Hosp.,* 57 F.3d 1446, 1454-55 (7th Cir. 1995) (finding that "an inability to fulfill long shifts or 36 hour call duties" did not establish the existence of a disability within the meaning of the ADA); *Kellogg v. Union Pac. R.R. Co.*, 233 F.3d 1083, 1087-88 (8th Cir. 2000); *Taylor v. Nimock's Oil Co.*, 214 F.3d 957, 960-61 (8th Cir. 2000) ("[Plaintiff] has not shown that working 40 hours a week and lifting no more than 10 pounds limits her employment opportunities in her geographic area"); *Tardie v. Rehab. Hosp. of Rhode Island,* 168 F.3d 538, 542 (1st Cir. 1999) ("[T]here are vast employment opportunities available which require only 40 hour work weeks"); *Berg v. Norand Corp.,* 169 F.3d 1140, 1145 (8th Cir. 1999); *see also Parkinson v. Anne Arundel Med. Ctr.*, 214 F.Supp.2d 511, 514-15 (D.Md. 2002) ("[C]ourts have uniformly held that 'an inability to work overtime is not a substantial limitation on the ability to work'"); *Brennan v. Nat'l Tel. Directory Corp.,* 850 F.Supp. 331, 343 (E.D. Pa. 1994) ("The inability to work overtime hardly makes a plaintiff handicapped").

Here, Plaintiff was physically able to work a normal 40-hour work week and has not demonstrated that her impairments significantly restricted the class of jobs or a broad range of jobs available to her. Therefore, she cannot demonstrate that she had a substantial limitation to

the major life activity of "working" upon which to base a claim of disability under Section 504 of the RA.

        **b.**     **Plaintiff Was Not Substantially Limited In Her Ability to Sit Based On Her Doctor's Order To Stand and Stretch or Walk Around Every Hour.**

Similarly, Plaintiff has failed to demonstrate that her condition, which required that she stand and stretch or walk around every hour, substantially limited her in the major life activity of "sitting" as compared to most people in the general population. 29 CFR § 1630.2(j)(1) ("An impairment is substantially limiting within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population"). Numerous courts have held that the inability to sit continuously for more than one or two hours does not constitute a disability within the meaning of the law. *See, e.g., Dupre v. Charter Behavioral Health Sys. of Lafayette*, 242 F.3d 610 (5th Cir. 2001) (holding that Plaintiff not substantially limited in the major life activities of sitting when Plaintiff's limitations in sitting required her to get up every hour and walk around); *McDonough v. Donahoe,* 673 F.3d 41, 48 (1st Cir. 2012) (holding that employee not substantially limited in her ability to sit where evidence showed that she engaged in sitting everyday); *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 644 (2nd Cir. 1998) (holding that police officer not substantially limited in major life activity of sitting as compared with the average person where could not sit "for long periods of time" at his desk without getting up and stretching); *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 186 (3rd Cir. 1999) (upholding summary judgment against employee who required hourly breaks while sitting or walking).

Here, the evidence does not demonstrate that Plaintiff's ability to sit in one place and perform stationary work for long periods of time was substantially limited as compared with

most people in the general population.  Thus, Plaintiff has failed to set forth a prima facie case of disability discrimination under Section 504 of the RA.

> **2.** **Plaintiff Was Not a "Qualified Individual" Because She Could Not Perform An Essential Function of the Job Due to Her Inability to Work More Than 40 Hours Per Week As Needed.**

Furthermore, notwithstanding whether Plaintiff had a "disability," her inability to perform the essential functions of her job as a TWA is fatal to each of her claims under Section 504.  A qualified individual with a disability is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  Plaintiff must show either that she can perform the essential functions of her job without accommodation, or, failing that, show that she can perform the essential functions of her job with a reasonable accommodation.  *Davis v. Florida Power & Light Co.,* 205 F.3d 1301, 1305-06 (11th Cir. 2000).  Thus, if Plaintiff is unable to perform an essential function of her job, even with an accommodation, she is, by definition, not a "qualified individual" and, therefore, the employment protections of Section 504 of the RA do not apply.  *Id.*  In other words, the law does *not* require an employer to eliminate an essential job function as a form of accommodation.  *Id.*; *see also EEOC v. Picture People, Inc.*, 684 F.3d 981, 987 (10th Cir. 2012).

"Essential functions" are defined under EEOC regulations to mean the "fundamental" duties to be performed in the position in question, but not functions that are merely "marginal." *Id.*  However, an essential function "encompasses more than core job requirements; indeed, it may also include scheduling flexibility."  *Rehrs v. The Iams Co.,* 486 F.3d 353, 358 (8th Cir. 2007).  Furthermore, the ADA provides that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written

description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *See* 42 U.S.C. § 12111(8). Indeed, courts "must give considerable deference to an employee's judgment regarding what functions are essential for service in a particular position." *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 99 (2nd Cir. 2003). The EEOC regulations, while not binding on the courts, further provide that other factors to consider are: (1) the limited number of employees available among whom the performance of that job function can be distributed; (2) the amount of time spent on the job performing the function; (3) the consequences of not requiring the incumbent to perform the function; (4) the work experience of past incumbents in the job; and (5) the current work experience of incumbents in similar jobs. *See* 29 C.F.R. § 1630.2(n)(3); 41 C.F.R. § 60-741.2(i). Ultimately, the question of whether a particular duty constitutes an essential function depends on the totality of the circumstances. *Rodal v. Anesthesia Group of Onondaga,* 369 F.3d 113, 120 (2nd Cir. 2004).

Where the demands of the job require working overtime on a regular basis, courts have recognized repeatedly that overtime constitutes an essential function of the job. *See, e.g., Davis v. Florida Power & Light Co.,* 205 F.3d 1301, 1305-06 (11th Cir. 2000); *Tardie v. Rehabilitation Hosp. of Rhode Island,* 168 F.3d 538, 544 (1st Cir. 1999); *Baker v. AVI Foodsystems, Inc.,* 2011 WL 6740544, *10 (W.D.N.Y. 2011). Here, because overtime was the tool that got the work done, it was an integral part of the position of Texas Works Advisor during the period of Plaintiff's employment. *See Davis,* 205 F.3d at 1306 (mandatory overtime is essential function when "overtime is the tool that gets the work done"). In effect, overtime work in a Texas Works Advisor position in the WHP was akin to job presence, which repeatedly has been held to be an essential function of a job. *See, e.g., Davis,* 205 F.3d at 1306 (finding that overtime work for the

position of reconnecting electrical service was "akin to job presence" and, as such, was an essential function of the position); *Jovanovic v. In-Sinc-Erator Div. of Ermeson Elec. Co.*, 201 F.3d 894, 900 (7th Cir. 2000) ("[O]ur review of the entire record in this case supports the district court's finding that regular attendance is an essential function of the tool and die maker position . . ."); *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 213 (4th Cir. 1994) ("An employee who cannot meet the attendance requirements of [a university teacher] cannot be considered a 'qualified' individual protected by the ADA"); *Jackson v. Veterans Admin.*, 22 F.3d 277 (11th Cir.) (holding under Rehabilitation Act that a housekeeping aid had failed to prove that he was "an otherwise qualified individual because he ha[d] failed to satisfy the presence requirement").

The summary judgment evidence shows that overtime was needed to complete the necessary functions of the job during the period of Plaintiff's employment. By all accounts, the position of Texas Works Advisor in the WHP was a demanding job. [Ex. EE, Welch Decl. ¶6]. TWAs were assigned each day a specific number of applications and changes to process and expected to complete those tasks timely and accurately. [Id.]. It was essential to the job that daily tasks were completed and that benefits were timely and accurately administered to the recipients of the program benefits. [Id.]. In addition, the Women's Health Program was subject to federal and state laws dictating the time limits for processing benefit applications and federal standards for accuracy. [Id.]. These requirements had to be strictly followed by the agency and were subject to financial penalties by the federal government for non-compliance. [Id.]. Consequently, all TWAs in the Women's Health Program were required to work mandatory overtime shifts on a weekly basis during the period of Plaintiff's employment to meet the production needs of the program. [Id.]. And, in fact, all TWAs and other field operations staff

had to be available to work overtime during that same time frame based on the ever-increasing

number of clients and applications, and the staffing limitations of the units.  [Id.].

Moreover, Plaintiff has offered no evidence that she could meet the production

requirements and timely and accurately complete the required number of tasks in only 40 hours

per week.[9]  To the contrary, even with her temporary accommodations, Plaintiff had trouble

meeting the production goals required for her regular 8-hour shifts, and could not consistently

meet performance expectations concerning the quantity and accuracy of her work.  [Ex. EE,

Welch Decl. ¶11].  Because an employer is not required to eliminate an essential function of the

job as form of accommodation, Plaintiff has not shown a genuine issue of material fact as to

whether she was a "qualified individual" for the purposes of Section 504.  Therefore, the Court's

analysis should begin and end here as to each of Plaintiff's claims of disability discrimination,

and Defendants are entitled to summary judgment.  *See Shannon,* 332 F.3d at 100 ("a reasonable

accommodation can never involve the elimination of an essential function of a job"); *Kramer v.*

*Tosco Corp.,*  233 Fed. Appx. 593, 596 (9th Cir. 2007) (plaintiff cannot state interactive process

claim where plaintiff cannot do essential functions of the job with a reasonable accommodation).

**B.**     **Plaintiff Has Failed to Demonstrate That Defendants Failed To Reasonably Accommodate Plaintiff, or To Engage In The Interactive Process In Good Faith.**

**1.**     **Plaintiff's Request for an Indefinite or Unlimited Exemption From Working Overtime Was Unreasonable As a Matter of Law.**

Even if Plaintiff were able to establish that she was a qualified individual with a

disability, Plaintiff has failed to demonstrate that Defendants failed to reasonably accommodate

---

[9] In an analogous situation, the First Circuit dismissed the plaintiff's ADA claim on other grounds, but nonetheless addressed the "essential function" issue within the context of the plaintiff's claim under the FMLA.  *See Tardie v. Rehabilitation Hosp.*, 168 F.3d 538 (1st Cir. 1999).  The First Circuit wrote that "[a]t bottom, [plaintiff] offers no evidence that she or anyone else could perform the job in only forty hours per week," and thus "the district court did not err in finding that working more than 40 hours per week was an essential function of the position."  *Id.*

her when it denied her request for an indefinite or unlimited exemption from working overtime hours at any time, without providing any clarification or estimated duration for the hourly restrictions based on a "lifelong" condition. As discussed above, Defendants had already temporarily relieved her from working overtime hours while it engaged in the interactive process. [Ex. CC, McNiel Decl. ¶8]. Furthermore, it is undisputed that Defendants granted Plaintiff's request to ambulate throughout the workday. [Id.]. The law is clear, however, that an accommodation that eliminates an essential function of the job is unreasonable. *See Bradley v. Univ. of Tex. M.D. Anderson,* 3 F.3d 922, 925 (5th Cir. 1993) (holding that "[s]uch redefinition exceeds reasonable accommodation"); *Hall v. U.S. Postal Serv.,* 857 F.2d 1073, 1078 (6th Cir. 1988); *EEOC v. AT&T Mobility Servs.,* 2011 WL 6309449, *9 (E.D. Mich. 2011). While an employer may restructure a position as a means of accommodation, such restructuring only pertains to non-essential duties or marginal functions of a job. *See Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 632 (6th Cir. 1999); *see also Hoskins v. Oakland County Sheriff's Dep't,* 227 F.3d 719, 726 (6th Cir. 2000) ("the ADA does not require employers to accommodate individuals by shifting an essential job function unto others"). Here, the accommodation sought by Plaintiff would have required Defendants to hire additional personnel or shift responsibility to existing personnel in order to handle Plaintiff's case load that was in excess of her 40-hour work week. [Ex. EE, Welch Decl. ¶¶10-11]. However, that type of "accommodation" is unreasonable as a matter of law. *See Bratten*, 185 F.3d at 632.

> **2.** **Plaintiff Has Not Shown That HHSC Failed to Reassign Her to a Vacant Position In the San Antonio Area That Did Not Require the Ability to Work Overtime.**

---

at 544.

Second, Plaintiff has failed to demonstrate that Defendants failed to reasonably accommodate Plaintiff when it did not reassign her to a vacant position in the San Antonio area that did not require the ability to work overtime. While an employer may accommodate an otherwise qualified individual by reassigning that individual to a vacant position, it is the Plaintiff's burden to show that such positions existed and were vacant at the time her employment was terminated. *See Jenkins v. Cleco Power,* 487 F.3d 309, 315 (5th Cir. 2007) ("For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant. Under the ADA, an employer is not required to give what it does not have"); *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996); *Munoz v. Seton HealthCare,* 2013 WL 1293425, *9 (W.D. Tex. 2013). Merely alleging that Defendants must have had some equivalent position for Plaintiff to fill is not sufficient. *Id.* Here, the evidence shows that Plaintiff requested reassignment to another position, but that none of the positions then available in her desired geographic area satisfied her requirement of no overtime. [Ex. HH, Bennett Decl. ¶3; Ex. II, Garcia Decl. ¶6]. Furthermore, Grace Mosier, the Program Director for Region 8 (which encompasses San Antonio and surrounding areas), attests that, in 2011, all employees and field operations staff in the Texas Works program in Region 8, including Texas Works Advisors and Clerks, were required to perform overtime as needed to complete the necessary work so that the needs of the clients were met, just as in the Mr. McNiel's unit. [Ex. FF, Moser Decl. ¶3]. In fact, due to the statutory deadlines and the nature of the work, no employee in Region 8 has ever been permanently exempted from this requirement to be available to work overtime as needed.[10] [Id.].

---

[10] Ms. Moser states that, since 2010, TWAs under her supervision have been required to sign a document entitled "Texas Works Advisors - Realistic Job Preview" which specifically includes the statement, "21. I am willing to work overtime when requested such as through my lunch hour, after 5:00PM, or on weekends, with advance

3.      **Plaintiff Has Not Shown That HHSC Failed to Participate in the Interactive Process in Good Faith.**

Third, to the extent an independent claim is asserted, the record simply does not support Plaintiff's allegation that Defendants failed to participate in the interactive process in good faith. "To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]." 29 C.F.R. § 1630.2(a)(3); *but see Keith v. Cnty. of Oakland*, 703 F.3d 918, 929 (6th Cir. 2013) (noting that the failure to engage in the interactive process is not an independent violation of the ADA). "This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.* Both parties must participate in this process in good faith. *Jakubowski v. The Christ Hosp.*, 627 F.3d 195, 202 (6th Cir. 2011). Under the interactive accommodation process, the employee has the burden of proposing the initial accommodation. *Id.* The employer is not required to propose a counter accommodation in order to participate in the interactive process in good faith, but taking the extra step of proposing counter accommodations may be additional evidence of good faith. *Id.*

Here, Plaintiff has failed to demonstrate that Defendants did not participate in the interactive process in good faith when the Civil Rights Office engaged with Plaintiff, HHSC management, and the human resources department in a nearly 3-month-long effort to determine the nature of Plaintiff's overtime restriction, and whether Plaintiff could be transferred to a vacant position in San Antonio that did not require overtime. As discussed above, Defendants had already temporarily relieved her from working overtime hours while it engaged in the interactive process. [Ex. CC, McNiel Decl. ¶8]. Furthermore, it is undisputed that Defendants

---

notice." [Ex. FF, Moser Decl. ¶4].

granted Plaintiff's request to ambulate throughout the workday.  [Id.].  Therefore, the basis for

Plaintiff's interactive process complaint apparently is that the process was ultimately ineffective

due to the fact that Defendants did not place her into a position without overtime as she desired.

However, as previously noted, it was Plaintiff's burden to show that another position existed and

was vacant at the time Plaintiff's employment was terminated.  *Monette*, 90 F.3d at 1186.

Plaintiff has not met this burden.   Moreover, the record evidence does not support Plaintiff's

argument that Defendants acted in bad faith.

**C.**  **Plaintiff Has Failed to Establish That Defendant Retaliated Against Her When It Denied Her Proposed Accommodation and Terminated Her Employment Because She Could Not Perform the Essential Functions of Her Job With or Without Reasonable Accommodation.**

Plaintiff also has failed to establish that Defendants retaliated against her in violation of

Section 504 of the RA by refusing her proposed accommodation and terminating her

employment.  To establish a prima facie case of retaliation under the ADA or Section 504 of the

RA, an employee must show that:  (1) she engaged in a protected activity; (2) suffered an adverse

employment action; and (3) there was a causal link between the two.  *Calderon v. Potter,* 113

Fed. Appx. 586, 592 (5th Cir. 2004).  Even if an employee can establish a prima facie case,

however, if the employer offers legitimate reasons for the adverse employment action, the burden

shifts back to the employee to demonstrate a triable issue of fact that such reasons are pretextual.

Moreover, "when an employee gives a legitimate, non-discriminatory reason for discharging the

plaintiff, 'it is not [the court's] province to decide whether the reason was wise, fair, or even

correct, ultimately, so long as it truly was the reason for the plaintiff's termination.'"  *Hawkins v.*

*PepsiCo, Inc.,* 203 F.3d 274, 279 (4th Cir. 2000); *see also Rivera v. City & Cty. Of Denver,* 365

F.3d 912, 924-25 (10th Cir. 2004).  A court should not second-guess an employer's appraisal.  *Id.*

Instead, the court's sole concern should be whether the reason for which Defendants discharged Plaintiff was retaliatory. *Id.*

Here, as discussed above, Defendants have a legitimate, non-retaliatory reason for the denial of her request for an indefinite or unlimited exemption from the overtime requirement and the termination of Plaintiff's employment—the TWA position required extended hours, beyond 40 hours per week or 8 hours per day, in order to complete necessary daily tasks and ensure that benefits were timely and accurately administered to the clients, and Plaintiff's medical restriction precluded her from working those hours. [Ex. EE, Welch Decl.; Ex. CC, McNiel Decl.]. Therefore, because Defendants have presented a legitimate reason for its decision not to permanently accommodate and to terminate Plaintiff, and Plaintiff presents no evidence that this decision was pretext or motivated by retaliatory animus, summary judgment must be granted as to Plaintiff's retaliation claim based on the failure to accommodate and termination. *See Patterson v. City of Seattle,* 97 F.3d 1460 (9th Cir. 1996) (holding that retaliation claims that allege "nothing more than variations on . . . failure to accommodate claim [are] without merit"); *Hatcher v. Philander Smith Coll.,* 251 F.3d 670, 676 (8th Cir. 2001) (holding that retaliation claim failed where no evidence plaintiff "was terminated for any reason other than her inability to perform the essential functions . . . with or without reasonable accommodation).

**D.**     **Plaintiff Has Failed to Establish That Defendants Retaliated Against Her Based on the Failure to Re-hire Her for Positions for Which She Has Submitted Various Online Applications.**

Plaintiff further alleges that Defendants retaliated against her in violation of Section 504 of the RA by failing to rehire her into vacant positions for which she has submitted online applications. Plaintiff apparently assumes that anytime she applied for a job and was not selected for an interview, no matter the position, division, or hiring authority, she did not get the job

because of her protected activity in requesting an accommodation from her supervisors Rex McNiel and KK Welch in her position as a TWA in the WHP in 2011. Plaintiff cannot satisfy her prima facie case because she has presented no evidence of a causal connection between any protected activity and her subsequent failure to be selected for interview from large pools of applicants as to each and every position she has applied. The record establishes that the application process is administered by a third-party vendor and then screened by administrative personnel. [Ex. GG, Duran Decl. ¶2]. Large pools of applications were submitted for each position that is posted. Following the screening, the applicants are narrowed down for interview, and then the hiring decision is based on the results of the interview process. [Ex. C, Valdez Dep; Ex. DD, Bowie Decl.]. Plaintiff has presented no evidence that the third-party vendor, application screeners, interviewers, or hiring authorities were aware of any protected activity alleged in this lawsuit.[11] Moreover, Defendants have presented a legitimate, non-retaliatory reason for the decisions, namely, that applicants were screened and scored based on objective criteria out of large applicant pools, in many cases more than 600, and that Plaintiff was not selected for interviews by unrelated and unknowing hiring authorities based on legitimate business reasons based on the large volume and selection criteria for the positions posted. [Id.]. The only evidence Plaintiff offers of pretext is that she had problems submitting her online applications and was sometimes forced to attempt to submit her application multiple times, and she believes the reason for this is because of her protected activity. [Pl's Orig. Compl., Dkt. #1, ¶9]. However, it is well settled that mere conjecture or conspiracy theories regarding Defendant's explanation is a pretext for intentional discrimination is an insufficient basis for the

---

[11] However, ironically, in at least one instance, Plaintiff omitted from her employment history any mention that she had previously worked for HHSC as a TWA, and the hiring authority testified that she was screened from selection process based on her perceived lack of experience. [Ex. C, Valdez Dep.].

denial of summary judgment.  *See Morgan v. Hilti, Inc.*  108 F.3d 1319, 1323 (10th Cir. 1997).

Therefore, Defendants are also entitled to summary judgment on her claim of retaliation based on

failure to re-hire.

## VII.  CONCLUSION

For these reasons, Defendants ask the court to grant its motion for summary judgment and

dismiss all of Plaintiff's claims with prejudice.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Director of Defense Litigation

JAMES "BEAU" ECCLES
Chief, General Litigation Division

  /s/   Marc Rietvelt
MARC RIETVELT
Texas Bar No. 24043892
Assistant Attorney General
General Litigation Division
P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 fax

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been filed with the court's CM/ECF electronic case management system on this, the 4th day of June, 2014, thus providing service to the following:

Michael V. Galo, Jr.
Galo Law Firm, P.C.
4230 Gardendale
Building 401
San Antonio, TX 78229
(210) 616-9800
Fax: (210) 616-9898

Attorney for Plaintiff

/s/ Marc Rietvelt
MARC RIETVELT
Assistant Attorney General