# EXHIBIT 18

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TEXAS
 2                     SAN ANTONIO DIVISION
 3   JOAN K. GONZALEZ,            )
                                  )
 4              Plaintiff,        )
     VS.                          )
 5                                ) CASE NO.: 13-CV-183-DAE
     TEXAS HEALTH AND HUMAN       )
 6   SERVICES COMMISSION, AND     )
     EXECUTIVE COMMISSIONER       )
 7   Kyle Janek, M.D. and         )
     Director Kelly Ford, in      )
 8   their Official Capacities,   )
                                  )
 9              Defendants.
10
                              AND
11
12              CAUSE NO. 2013-CI-17384
13   JOAN K. GONZALEZ,            ) IN THE DISTRICT COURT
                                  )
14              Plaintiff,        )
     VS.                          )
15                                ) OF BEXAR COUNTY, TEXAS
     TEXAS HEALTH AND HUMAN       )
16   SERVICES COMMISSION, AND     )
     EXECUTIVE COMMISSIONER       )
17   Kyle Janek, M.D. and         )
     Director Kelly Ford, in      )
18   their Official Capacities,   )
                                  )
19              Defendants.       ) 225TH JUDICIAL DISTRICT
20   _____
21
22                    ORAL DEPOSITION OF
23                    MARCELLUS HUCHISON
24                     APRIL 17, 2014
25   _____
```

1  ORAL DEPOSITION OF MARCELLUS HUCHISON, produced as
2  a witness at the instance of the Defendant, and duly
3  sworn, was taken in the above-styled and numbered cause
4  on April 17, 2014, from 3:48 p.m. to 4:10 p.m., before
5  Deborah A.G. Davidson, CSR, RPR, in and for the State of
6  Texas, reported by machine shorthand, at the Texas
7  Department of Human Services, 11307 Roszell Street, San
8  Antonio, Texas 72817, pursuant to the Federal Rules of
9  Civil Procedure and the provisions stated on the record
10 or attached hereto.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1                    A-P-P-E-A-R-A-N-C-E-S
 2
 3   FOR THE PLAINTIFF:
 4        Mr. Michael V. Galo, Jr.
          THE GALO LAW FIRM, P.C.
 5        4230 Gardendale
          Building 401
 6        San Antonio, Texas 78229
          Phone: (210) 616-9800
 7
     FOR THE DEFENDANTS:
 8
          Mr. Marc Rietvelt
 9        OFFICE OF THE ATTORNEY GENERAL
          General Litigation Division - 019
10        P.O. Box 12548
          Capitol Station Austin, Texas 78711
11        Phone: (512) 463-2100
12
     ALSO PRESENT:
13
          Russ Harris,
14             Assistant Attorney HHSC;
15        Joan K. Gonzalez;
16        Marcellus Huchison,
               The Witness;
17
          Deborah Davidson,
18             Certified Shorthand Reporter.
19
20
21
22
23
24
25
```

```
 1    Q.  Do you remember her asking you that?
 2    A.  During the time we worked together?
 3    Q.  Well, or even more recently?
 4    A.  No.  I don't think I have told Joan that.
 5    Q.  Are you required to work overtime?
 6    A.  We're not -- it's not -- well, you got a
 7 caseload, and so I think the requirement is they don't
 8 want you to work over ten hours overtime.
 9    Q.  Okay.
10    A.  Yeah.  I don't know the policy verbatim.  So --
11 you know, so -- but I think they don't want you working
12 over ten years.
13    Q.  Okay.  And are you required to work overtime?
14    A.  I don't think we are required to work overtime.
15    Q.  Okay.
16         MS. GONZALEZ:  It's by choice.
17    Q.  (BY MR. GALO) It is by choice?
18    A.  Well, it's by you're going to get your caseload
19 done.
20    Q.  Sure.
21    A.  Yeah.
22    Q.  In other words, if you want to -- but you don't
23 have a supervisor telling you you must work overtime --
24    A.  No.
25    Q.  -- every week?
```

DAVIDSON REPORTING, INC.
(210) 340-3656

1  A. No.

2  Q. Now, at the call center did you have to work
3  overtime?

4  A. Well, at the call center was a totally
5  different scenario.

6  Q. Okay.

7  A. I mean, a different time in life too.

8  Q. And you have already described for me in part
9  how it was different, but was there a rule at the call
10 center that you had to work "X" number of hours of
11 overtime every week?

12 A. Yes. And it was -- I think the reason we did
13 that was because we had just converted over to the new
14 Tiers program. The state adopted the new program --

15 Q. Yeah.

16 A. -- and we was -- and we was in that -- in that
17 conversion mode.

18 Q. How was it that you got the job in the Schertz
19 office?

20 A. I requested it.

21 Q. Okay. And walk me through the process of
22 trying to -- you know, of leaving -- in other words, of
23 getting -- requesting a job outside the call center?

24 A. Well, originally when everybody that -- in my
25 little group that came over to the call center, it was

1 cases, generally somebody walk in off the street,
2 expedite need to be done, and then you have -- normally
3 we have what they call desk reviews is when some people
4 turn in application and you can process without actually
5 talking to them, and now we got the new ACA cases come
6 on board.
7     Q.  Uh-huh.
8     A.  And they usually give you about two or three of
9 those to do a day. I am generally done by three-thirty,
10 four every day and other people work a little late
11 because they don't get them done.
12     Q.  So what time do you go to work?
13     A.  I usually go to work at eight o'clock.
14     Q.  And you are done by three-thirty?
15     A.  (Moving head up and down.)
16     Q.  Is that right?
17     A.  I type fast.
18     Q.  Well, I am not disputing that.
19     A.  Yeah. And not every single day.
20     Q.  Are you --
21     A.  But most -- the most days -- most days.
22     Q.  You must not take a lunch?
23     A.  I take a lunch.
24     Q.  An hour?
25     A.  I take an hour.

1  Q. And you work Saturdays too?
2  A. If I can keep from it. I have been over at
3  that Schertz office, what, two and a half years and I
4  have probably worked two Saturdays in two and a half
5  years and -- and that wasn't -- it wasn't mandatory. It
6  was because I chose to.
7  Q. And generally speaking you work from eight to
8  three-thirty with an hour lunch?
9  A. No. I work from eight to five, but I am
10 usually done by three-thirty.
11 Q. So what do you do after three-thirty?
12 A. I do my admin work. Because a lot of times we
13 send cases back, we say, "Hey, I need information from
14 you," and so at that particular time that's when I do
15 that kind of admin work.
16 Q. Okay. I follow you.
17 A. (Moving head up and down.)
18 Q. Do you ever have to stay late? Is it rare?
19 A. It's rare.
20 Q. Do the -- you were talking about some of these
21 works advisors that had been at the old center and then
22 they had moved to the call center and then they -- some
23 of them have kind of spread out to different local
24 offices if I understood you correctly?
25 A. Uh-huh.

DAVIDSON REPORTING, INC.
(210) 340-3656

1  remember data broker?
2      A.   Uh-huh.  Of course.
3      Q.   Was that something you used in the WHP program?
4      A.   Yeah.  We used it quite frequently.
5      Q.   Okay.  That was something you needed to do your
6  job, right?
7      A.   Most definitely.
8      Q.   If you didn't have access would it have made it
9  harder or more time consuming to do your job?
10     A.   I believe it most definitely would, yeah.
11     Q.   Okay.  You know, the E.E.O.C. in this case they
12 actually found -- they did a big investigation and they
13 actually found in Joan's favor.  They interviewed some
14 people and I was reading these interview notes that the
15 E.E.O.C. investigator -- investigator wrote and, you
16 know, like one of the people they talked to -- what was
17 that lady's name?  Bear with me just a second.  Did you
18 ever hear rumors that they were trying to get rid of
19 Joan?
20     A.   No.
21          MR. GALO:  No.  That's not the one that I
22 am --
23          MS. GONZALEZ:  They're all --
24     Q.   (BY MR. GALO) Bear with me, I'm almost done.
25 We'll get you out of here in just a second.  Were you --