UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOAN K. GONZALEZ, | § | No. 5: 13-CV-183-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| TEXAS HEALTH AND HUMAN | § | |
| SERVICES COMMISSION, and | § | |
| EXECUTIVE COMMISSIONER | § | |
| KYLE JANEK, M.D., DIRECTOR | § | |
| KELLY FORD, in their official | § | |
| capacities. | § | |
| | § | |
| Defendants. | § | |

ORDER (1) DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND (2) GRANTING DEFENDANTS' MOTION TO STRIKE

On October 21, 2014, the Court heard argument on Texas Health and

Human Services Commission, Executive Commissioner Kyle Janek, M.D., and

Director Kelly Ford's (collectively, "Defendants") Motion for Summary Judgment

(Dkt. # 18) and Defendants' Motion to Strike and Objections to New Argument,

Objections, and Summary Judgment Evidence in Plaintiff's Sur-Reply (Dkt. # 26).

At the hearing, Marc Rietvelt, Esq., represented Defendants, and Michael Galo, Jr.,

Esq., represented Plaintiff Joan K. Gonzalez ("Gonzalez" or "Plaintiff"). After

careful consideration of the arguments at the hearing, and in the supporting and

opposing memoranda, the Court **DENIES** Defendants' Motion for Summary Judgment (Dkt. # 18) and **GRANTS** Defendants' Motion to Strike (Dkt. # 18).

BACKGROUND

Plaintiff was hired by Defendant Texas Health and Human Services Commission ("HHSC") on January 24, 2011.  (Dkt. # 18 at 4–5.)  Plaintiff held the position of Texas Works Advisor ("TWA").  (Id.)   After undergoing the necessary training, Plaintiff began working as a probationary employee for HHSC on April 14, 2011.  (Id. at 9, 13.)

On June 9, 2011, Plaintiff felt ill while at work.  (Id.)  On June 10, 2011, while Plaintiff was at work, she became so ill that she had to leave early to go see a doctor.  (Id.)  Plaintiff was diagnosed with a pulmonary embolism and deep vein thrombosis and took a leave of absence from work of approximately five weeks.  (Dkt. ## 18 at 9; 22 at 1.)  During this time, she was placed on medication to reduce the likelihood of another episode.  (Dkt. # 22 at 1.)  Plaintiff's doctor required that she be placed under certain restrictions when she returned to work.  (Id.)  These restrictions included that she had to ambulate every hour for ten minutes and that she was precluded from working more than eight hours per day.  (Id.; Dkt. # 18 at 10.)  The documentation Plaintiff provided to Defendants indicated that these restrictions were permanent.  (Dkt. # 18 at 10.)  Plaintiff discussed these restrictions with Dionicio Garcia, the HHSC Civil Rights

Specialist, who began an interactive process with her to determine whether Defendant could accommodate her. (Dkt. # 22 at 5; Dkt. # 18 at 11.) During this process, Plaintiff was temporarily relieved from working overtime. (Dkt. # 18 at 11; Dkt. # 22 at 5.)

Defendants stated that they could accommodate Plaintiff's request to work no more than eight hours per day, but that she would still need to work more than forty hours per week (i.e., working overtime on Saturdays). (Dkt. # 18 at 11.) According to Defendants, Plaintiff's doctor did not approve this solution. (Id.)

Upon learning that she would need to work in excess of forty hours per week to maintain her current position, Plaintiff instead sought the accommodation of a transfer to a position where overtime was not an essential function of the job. (Dkt. # 18 at 6.) Plaintiff believed that other employees in field offices were not required to work overtime. (Id.) Additionally, Plaintiff believed she could transfer to the Health Science Center. (Id.)

Garcia consulted with Human Resources Specialist Lonnie Bennett to see if there were any vacant positions in San Antonio or the surrounding area for which Plaintiff was qualified. (Dkt. # 22 at 6.) Bennett stated that there were no available positions that guaranteed a forty-hour work week or that did not require overtime as an essential job function. (Id.) Plaintiff claims that Bennett did not engage in a sufficiently thorough search because he did not search sister

departments of HHSC and he did not make repeated searches to determine whether positions had become available.

Plaintiff requested transfers to a number of positions to her supervisor Rex McNiel.  (Dkt. # 22 at 9.)  However, nothing ever came of those requests. (Id.)  Plaintiff applied independently and made a transfer request to the position of Medical Eligibility Specialist II (CT) Position # 55190, Job Requisition # 183399. (Id.)  However, Plaintiff was not placed in this position.  The job description of this position did not mention a requirement of overtime.

Plaintiff was terminated on October 17, 2011.  (Dkt. # 18 at 5.) Defendants state it was because Plaintiff could not perform the essential function of the job of working overtime.  (Dkt. # 18 at 14.)

Subsequently, Plaintiff filed a charge with the EEOC which found that Plaintiff had been discriminated against on the basis of her disability.  On March 8, 2013, Plaintiff filed suit in this Court.[1]

## LEGAL STANDARD

A court must grant summary judgment when the evidence demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

---

[1] Although Plaintiff's initial complaint alleged a charge of retaliation, Plaintiff has since abandoned this claim, and therefore, the Court will not address it.

In seeking summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the burden then shifts to the non-moving party "to go beyond the pleadings and by [his or her] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted). The non-moving party "must, either by opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing a genuine issue as to a material fact exists." Leghart v. Hauk, 25 F. Supp. 2d 748, 751 (1998). "[Non-movants] are required to identify the specific evidence in the record and to articulate the precise manner in which that evidence supports their claim." Id. "Rule 56 does not require the district court to sift through the record in search of evidence to support a [non-movant's] opposition to summary judgment." Id.

The Court evaluates the proffered evidence in the light most favorable to the non-moving party. Lemelle v. Universal Mfg. Corp., 18 F.3d 1268, 1272 (5th Cir. 1994). The Court "examines the pleadings, affidavits, and other evidence introduced in the motion, resolves any factual doubts in favor of the non-movant, and determines whether a triable issue of fact exists." Leghart, 25 F. Supp. 2d at 751. However, if a party "fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the Court must grant summary judgment against that party.  Celotex, 477 U.S. at 322.

DISCUSSION

I.    Motion to Strike

First, Defendants move to strike new arguments and evidence Plaintiff presents for the first time in her Sur-reply.  (Dkt. # 26.)  Defendants argue that Plaintiff's objections to summary judgment evidence raised in the Sur-reply could have been raised in her response.  Additionally, Defendants contend that Plaintiff's Sur-reply introduces six new exhibits containing new evidence to support her claims.  Finally, Defendants object to Plaintiff's Sur-reply paragraphs 2–7 and 9–11.  Defendants argue that Plaintiffs contentions here are not in response to any new theory raised by Defendant in its Reply, but could have been asserted in Plaintiff's Response.  The Court agrees.  These paragraphs within Plaintiff's Sur-reply do not raise any arguments that could not have been made in Plaintiff's Response.  Therefore, the Court strikes these paragraphs from the record.

Additionally, Defendants object to the new evidence that Plaintiff presents.  These pieces of evidence all respond to arguments raised in Defendant's Motion for Summary Judgment, rather than any new arguments in Defendant's Reply.  Therefore, the Court grants the exclusion of these pieces of evidence.

Finally, Plaintiff has moved to strike two pieces of evidence presented by Defendants. However, the Court finds that this issue is better addressed in the discussion of the summary judgment arguments below.

II.    Motion for Summary Judgment

Defendants move for summary judgment on Plaintiff's claim that Defendants discriminated against Plaintiff in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et. seq., and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. 701, et seq., by failing to provide reasonable accommodation for her disability. (Dkt. # 18.)

A.    History of the ADA and the Rehabilitation Act

Congress enacted the ADA in 1990 in an effort to eliminate discrimination against people with disabilities. Along with the ADA, Congress enacted the RA in 1973. "Both of these statutes prohibit employment discrimination against qualified individuals with disabilities, but the statutes govern different entities: the ADA applies only to public entities, including private employers, 42 U.S.C. § 12131(1), whereas the RA prohibits discrimination in federally-funded programs and activities, 29 U.S.C. § 794(a)." Kemp v. Holder, 610 F.3d 231, 234 (5th Cir. 2010).

Both the ADA and the RA are subject to the same legal standards and provide the same remedies. Id. Additionally, "the relevant definition of disability

set forth in the ADA [applies] to claims made under the RA." Id. at 235.[2] "Both the ADA, 42 U.S.C. § 12112(a), and the Rehabilitation Act, 29 U.S.C. § 794(a), prohibit discrimination on the basis of an employee's disability." Amsel v. Tex. Water Dev. Bd., 464 F. App'x 395, 399 (5th Cir. 2012) (analyzing claims under the ADA). Claims under the RA are subject to the same standards as those under the ADA. Id.

"[A plaintiff] may establish a claim of discrimination under the ADA either by presenting direct evidence or by using the indirect method of proof set forth in McDonnell Douglas v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. ED. 2d 668 (1973)." Carbaugh v. Unisoft Intern., Inc., No. H–10–0670, 2011 WL 5553724, at *3 (S.D. Tex. Nov. 15, 2011). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption. In the context of [employment discrimination], direct evidence includes any statement or written document showing a discriminatory motive on its face." Id. (internal citations and quotation marks omitted).

The McDonnell Douglass analysis first requires that a plaintiff set forth a prima facie case for discrimination. Pedroza v. Autozone, Inc., 536 F. Supp. 2d 679, 699-700 (W.D. Tex. 2008). To make a prima facie case under the

---

[2] The changes to the ADA were mirrored in conforming amendments to the RA. Schmitz v. Louisiana, No. 07–891–SCR, 2009 WL 210497, at *1 (M.D. La. Jan. 27, 2009).

ADA, a "plaintiff must show he or she (1) suffers from a disability; (2) was qualified for the job; (3) was subject to an adverse employment action; and (4) was replaced by a non-disabled person or was treated less favorably than non-disabled employees." Id. (internal quotation marks omitted). To obtain compensatory damages as a remedy for violation of the ADA, "a plaintiff must show intentional discrimination." Id. (quoting Delano-Pyle v. Victoria Cnty., 302 F.3d 567, 575 (5th Cir. 2002)).

"If the plaintiff makes a prima facie showing of disability-based discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Once the employer articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination." Carbaugh, 2011 WL 5553724, at *3 (internal citations and quotation marks omitted).

In January 2009, the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA") took effect. The ADAAA did not change the elements of the prima facie case, but instead "simplif[ied] the analysis of 'disability' and focus[ed] the finder of fact on whether there was discrimination in the adverse-employment action." Neely v. PSEG Texas, Ltd. P'ship., 735 F.3d 242, 244 (5th Cir. 2013).

> Although the text of the ADAAA expresses Congress's intention to broaden the definition and coverage of the term "disability," it in no way eliminated the term from the ADA or the need to prove a disability on a claim of disability discrimination. Even under the ADA as amended by the ADAAA, to prevail on a claim of disability discrimination under the ADA, a party must prove that (1) he has a disability; (2) he is qualified for the job; and (3) [the covered entity] made its adverse employment decision because of [the party's] disability. In other words, though the ADAAA makes it easier to prove a disability, it does not absolve a party from proving one.

Neely, 735 F.3d at 245 (internal citations and quotation marks omitted).

Previously, under the ADA, the Supreme Court's decision in Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999), created a "catch-22" because "an employer [could] evaluate an employee's capabilities without regard to mitigating devices, but the use of such devices [was] nevertheless considered when the court determine[d] whether that employee [was] 'disabled' under the terms of the ADA." Kemp, 610 F.3d at 236. The ADAAA explicitly expanded what was to be considered a disability. Id. Under the ADAAA, the "determination of whether an impairment substantially limits a major life activity [is to] be made without regard to the ameliorative effects of mitigating measures . . . ." Id. (quoting ADAAA, sec. 4(a), § (4)(E)(l)).

B.    Discrimination by Failure to Accommodate Claim

"The ADA requires employers to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the

accommodation would impose an undue hardship.'" Carbaugh, 2011 WL

5553724, at *15 (quoting 42 U.S.C. § 12112(b)(5)(A)). "When a qualified

individual with a disability requests a reasonable accommodation, the employer

and employee should engage in flexible, interactive discussions to determine the

appropriate accommodation." E.E.O.C. v. Agro Distrib., LLC, 555 F.3d 462, 471

(5th Cir. 2009).

To establish a claim for failure to accommodate, a plaintiff must show

that "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability

and its consequential limitations were 'known' by the covered employer; and

(3) the employer failed to make 'reasonable accommodations' for such known

limitations." Neely, 735 F.3d at 247 (quoting Feist v. La. Dep't of Justice, Office

of the Att'y Gen., 730 F.3d 450, 452 (5th Cir. 2013).

### 1.    Known by the Employer

As a preliminary matter, neither party here disputes that Plaintiff's

claimed disability was known to Defendants.  Therefore, Plaintiff has established

this element of her prima facie case.  (Dkt. # 18 at 20.)

### 2.    Disability

A person with a disability under the ADAAA is one who has "a

physical or mental impairment that substantially limits one or more major life

activities," who has "a record of such impairment," or who is regarded as having such an impairment.  42 U.S.C. § 12102(1).

"The ADAAA contains the same definition of disability contained in the ADA, but adds provisions to the statute which directly change how to determine whether an individual satisfies the definition."  Schmitz v. Louisiana, No. 07–891–SCR, 2009 WL 210497, at *2 (M.D. La. Jan. 27, 2009).  Under the ADAAA, the determination of whether an individual is disabled is made "without regard to the ameliorative effects of mitigating measures."  Id.  Additionally, "[t]he disability test may be satisfied either by actually suffering an impairment that substantially limits a major life activity or 'being regarded as having such an impairment.'"  Meinelt v. P.F. Chang's China Bistro. Inc., 787 F. Supp. 2d 643, 651 (S.D. Tex. 2011) (quoting 42 U.S.C. § 12102(2)(B)).  The ADAAA requires that "[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of this chapter."  42 U.S.C. § 12102(4)(A).  Yet, it nonetheless requires that a disability "substantially [limit] the ability of an individual to perform a [major] life activity as compared to most people in the general population."  Culotta v. Sodexo Remote Sites P'ship, 864 F. Supp. 2d 466, 474 (E.D. La. 2012) (internal quotation marks omitted).

Defendants argue that Plaintiff does not suffer from a disability as defined in the RA.  (Dkt. # 18 at 2.)  Defendants do not dispute that Plaintiff submitted documentation stating that she had been "diagnosed with bilateral pulmonary embolism and lower extremity deep vein thrombosis."  (Id. at 10.)  Defendants also do not dispute that the medical documentation stated that Plaintiff "must be able to take 10 minute breaks every hour to ambulate and decrease risk of clots."  (Id.)  Additionally, Defendants do not dispute that Plaintiff was restricted from working overtime due to her condition or that her condition constitutes an "impairment."  (Id. at 10, 15.)  Instead, Defendants argue that this impairment does not rise to the level of a disability because it does not substantially limit her ability to work or sit as compared to the general population.  (Id. at 15.)  Additionally, Defendants advocate (1) that the inability to work overtime is not a substantial limitation and (2) Plaintiff's condition did not substantially limit her ability to sit as compared to the general population.

In contrast, Plaintiff contends that Defendants arguments are based on the outdated definition of 'disability' used in the ADA, rather than the more lenient definition contained in the ADAAA.  (Dkt. # 22 at 2.)  Plaintiff argues that under the ADAAA definition of disability, her impairment clearly qualifies as a disability.

a.     Major Life Activity

The ADAAA maintains that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  Additionally, "a major life activity also includes the operation of a major bodily function, including but not limited to . . . respiratory [and] circulatory . . . functions.  Id. § 2102(2)(B).

Here, Plaintiff argues that the major life activities in which she is substantially limited are sitting and working.  (Dkt. # 22 at 16.)  Defendants do not dispute that these are 'major life activities,' rather they dispute that she is substantially limited in them.  Therefore, the Court acknowledges the obvious that sitting and working are major life activities.

b.     Substantially Limits

The enactment of the ADAAA broadened the definition of who may be considered disabled as compared to the ADA.  The ADAAA provides that "[a]n impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability."  42 U.S.C. § 12102(4)(C).  Moreover, "[a]n impairment that is episodic or in remission is a

disability if it would substantially limit a major life activity when active.  Id.
§ 12102(4)(D).

   "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . reasonable accommodations . . . ."  Id.
§ 12102(4)(E)(i).  Additionally, this determination is not one that requires "extensive analysis".  Garner v. Chevron Phillips Chem. Co., L.P., 834 F. Supp. 2d 528, 538 (S.D. Tex. 2011).  Moreover, "[t]o be 'substantially limiting' an impairment does not have to prevent or significantly restrict a person from performing a major life activity."  Garner, 834 F. Supp. 2d at 539 (citing Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act, as Amended, 29 C.F.R. 1630 (2011)).

   In contrast to the ADA, the ADAAA has removed from its text any discussion specifically of the major life activity of working and what constitutes a substantial restriction on an individual's ability to work.  These changes are analyzed in the EEOC's Guidance on the ADA issued in 2014 ("Guidance").  The Appendix to Part 1630 – Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. § 1630 (2014).  "The Commission has removed from the text of the regulations a discussion of the major life activity of working."  29 C.F.R. § 1630, App'x.; The Appendix to Part 1630 – Interpretive Guidance on

Title I of the Americans with Disabilities Act, 29 C.F.R. § 1630 (2014). The

Guidance states this change was implemented because generally, a disability that

substantially limits an individual from working, "usually substantially limits one or

more other major life activities." Id. The Guidance provides that "[i]n the rare

cases where an individual has a need to demonstrate that an impairment

substantially limits him or her in working, the individual can do so by showing that

the impairment substantially limits his or her ability to perform a class of jobs or

broad range of jobs in various classes as compared to most people having

comparable training, skills, and abilities." Id. Further, the Guidance indicates that

"the determination of coverage under the [ADAAA] should not require extensive

and elaborate assessment, and the EEOC and the courts are to apply a lower

standard in determining when an impairment substantially limits a major life

activity, including the major life activity of working, than they applied prior to the

[ADAAA]." Id. However, "[d]emonstrating a substantial limitation in performing

the unique aspects of a single specific job is not sufficient to establish that a person

is substantially limited in the major life activity of working." 29 C.F.R. § 1630.

Additionally, the EEOC regulations, quoted above, provide that courts

should consider the following factors when determining whether an individual is

substantially limited as compared to most people in the general population:

(1) "the condition under which the individual performs the major life activity";

(2) "the manner in which the individual performs the major life activity"; and

(3) "the duration of time it takes the individual to perform the major life activity, or

for which the individual can perform the major life activity . . . ."  29 C.F.R.

§ 1630.2(j)(4)(i).

   "Specifically, the regulations instruct that when evaluating whether

someone is 'substantially limited' the focus should not be on the 'outcomes' the

person can achieve, as 'an impairment need not prevent, or significantly or

severely restrict, the individual from performing a major life activity in order to be

considered substantially limiting.'"  Molina v. DSI Renal, Inc., 840 F. Supp. 2d

984, 995 (W.D. Tex. 2012).

   In comparing a plaintiff's ability to perform the major life activity as

to the ability of the general population, the courts may consider, among other

things, "pain experienced when performing a major life activity."  Molina, 840 F.

Supp. 2d at 995.

   Here, the Court finds that Plaintiff is substantially limited in the major

life activity of sitting.  Plaintiff may not safely sit for more than fifty minutes

without getting up and ambulating.  As compared to the general population, the

Court finds that this is a substantial limitation.

   Other courts have found substantial limitations where (1) a plaintiff

was limited in his ability to sleep because of HIV, Gardea v. DialAmerica

Marketing, Inc., No. EP–12–CV–158–KC, 2013 WL 1855794, at * (W.D. Tex. 2013);  (2) a plaintiff was limited in his circulatory function by his carotid artery disease, Suggs v. Central Oil of Baton Rouge, LLC, No. 13-25-RLB, 2014 WL 3037213, at *4 (M.D. La. July 3, 2014); and (3) a plaintiff was substantially limited in the major life activity of working where the plaintiff suffered headaches and moments of confusion as a result of her high blood pressure, Martin v. St. Luke's Episcopal Hosp., No. H-13-0718, 2014 Wl 4810303, at *7 (S.D. Tex. Sept. 23, 2014).

In each of these examples, courts have relied on each plaintiff's own statements that his or her condition is substantially limiting.  These examples, combined with the exhortation that the provisions of the ADAAA be liberally construed leads this Court to conclude that Plaintiff is substantially limited in the major life activity of sitting.

Here, Plaintiff also advocates that she is substantially limited in the major life activity of working because Plaintiff may not sit for more than fifty minutes at a time and Plaintiff was restricted from working overtime.

Pre-ADAAA precedent maintained that an "inability to perform one aspect of [the employee's] job while retaining the ability to perform work in general does not amount to a substantial limitation of the activity of working." Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 727 (5th Cir. 1995).  Subsequently,

in <u>Shannon v. Henderson</u>, 275 F.3d 42, at*7 (5th Cir. 2001), the Fifth Circuit held that an inability to work overtime was insufficient to demonstrate that the employee was substantially limited in the major life activity of working.

However, in light of the enactment of the ADAAA, this Court finds that Plaintiff was substantially limited in the major life activity of working because she was restricted from working overtime and because she was also substantially limited in the major life activity of sitting.

Although there is no case on point in the Fifth Circuit, the expansive text of the ADAAA indicates that the analysis of whether an individual is substantially limited is not meant to be an onerous inquiry by the Court. Additionally, the Court finds <u>Hoffman v. Carefirst of Fort Wayne, Inc.</u>, 737 F. Supp. 2d 976 (N.D. Ind. 2010) persuasive. In <u>Hoffman</u>, the court found that Hoffman was disabled due to renal cancer that was in remission because when the disease was not in remission he was unable to work overtime and that constituted a substantial limitation on his ability to work. 737 F. Supp. 2d at 982, 985–86.

Therefore, the Court finds that Plaintiff's inability to work overtime constitutes a substantial limitation on the major life activity of working. Because the Court finds that Plaintiff is substantially limited in the major life activities of working and sitting, Plaintiff has met the criteria of demonstrating that she has a disability.

### 3. Qualified Individual

"An individual is qualified under the ADA if, with or without reasonable accommodation, the person can perform the essential functions of the position." Amsel, 464 F. App'x at 399. "To avoid summary judgment on whether [she] is a qualified individual, [the employee] needs to show (1) that [she] could perform the essential functions of the job in spite of [her] disability or (2) that a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job." Molina, 840 F. Supp. 2d at 996 (internal quotation marks omitted).

Defendants argue that they are entitled to summary judgment because Plaintiff is not a qualified individual because she could not perform the essential functions of her job, and there were no available jobs to which she was qualified to transfer as a reasonable accommodation. Plaintiff argues that she is a qualified individual because overtime was not an essential function of her job, and further, that she should have been afforded the reasonable accommodation of transferring to a job for which overtime was not an essential function.[3]

### a. Essential Functions of the Job

Essential functions must bear more than a 'marginal relationship' to the employee's position. To determine whether a function is essential,

_____

[3] Plaintiff also appears to argue that she was a qualified person with a disability with respect to the positions she applied to transfer. The Court will address Plaintiff's requests for transfers below.

> courts give consideration to the employer's judgment, as well as looking to evidence including, but not limited to written job descriptions, time spent performing the function, and consequences if the employee does not perform the function.

Molina, 840 F. Supp. 2d at 996 (internal citations and quotation marks omitted) (finding a triable issue of material fact as to whether lifting more than 20 pounds was an essential function of the plaintiff's job when both sides presented evidence).

Although the Fifth Circuit has not explicitly stated what factors should be considered to determine what functions of a job are essential, other circuits have spoken to this issue. The Eighth Circuit maintains

> Evidence to consider in this determination may include: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs.

Knutson v. Schwan's Home Serv., Inc., 711 F.3d 911, 914 (8th Cir. 2013).

Additionally, the Sixth Circuit maintains that to determine whether a job function is essential, a court should consider factors including (1) whether "the position exists to perform the function;" (2) the number of employees who can perform the function; (3) the specialization necessary to perform the function; (4) what the employer deems to be the essential functions of the position; (5) the written description of the position; (6) "[t]he amount of time spent on the job

performing the function;" (7) "[t]he consequences of not requiring the incumbent to perform the function;" (8) "[t]he terms of a collective bargaining agreement;" (9) [t]he work experience of past incumbents in the job;" and (10) "[t]he current work experience of incumbents in similar jobs."

Rorrer v. City of Stow, 743 F.3d 1025, 1039 (6th Cir. 2014).

The Court finds these to be a logical set of considerations for determining whether a job function is essential. The question before the Court then becomes whether overtime was an essential function of Plaintiff's position.

Defendants argue that weekly overtime was an essential function of Plaintiff's position. In support, Defendants assert that overtime "was the tool that got the work done" and that "it was an integral part of the position." Additionally, Defendants maintain that overtime was an essential function of the job "akin to job presence." (Dkt. # 18 at 20.) Defendants argue that "overtime was needed to complete the necessary functions of the job during the period of Plaintiff's employment." (Id. at 21.)

In response, Plaintiff appears to contend (1) that she could perform the essential functions of other jobs to which she requested transfer or applied during the relevant time period; (2) that the Court should strike Moser's declaration testimony because Moser was an undisclosed witness; (3) that the Court should strike the 2010 memorandum stating Texas Works Advisors must be willing to

work overtime because it was not disclosed; and (4) that Gonzalez offered competent evidence in her statement of facts that "working overtime was not in fact an essential function of the TWA and clerical positions in the local field offices or of the Medical Eligibility Specialist position, that such positions (in fact many such positions) were available in the San Antonio area." (Dkt. # 22 at 22–23.)

"To avoid summary judgment on the question of whether [a plaintiff] is a qualified employee, [a plaintiff] must show: (1) that [she] could perform the essential functions of the job in spite of [her] disability or (2) that a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job." Crossley v. CSC Applied Technology, L.L.C., 569 F. App'x 196, 198 (5th Cir. 2014) (internal citations and quotation marks omitted).

i. Plaintiff's Position as a TWA in the Call Center

Plaintiff appears to only make a half-hearted challenge to Defendants' argument that overtime was an essential function of Plaintiff's position at the call center. (Dkt. # 22 at 23.) Plaintiff focuses almost exclusively on whether the other positions for which Plaintiff applied require overtime as an essential job function.

Plaintiff acknowledges that "the job descriptions produced by Defendants for the TWA positions in the 'call center' where Gonzalez worked do mention the possibility of working overtime, albeit not in the section entitled

'Essential Job Functions.'" (Dkt. # 22 at 23.) Plaintiff presents no other evidence or argument that overtime was not an essential function of Plaintiff's position as a TWA in the call center.

The Plaintiff bears the burden of demonstrating that she was a qualified employee capable of performing the essential functions of her position. She has not met her burden here. The Court reaches the same conclusion based on its own examination of the record. There is ample testimony in the record that overtime work was necessary throughout the entirety of Plaintiff's employment to ensure that paperwork and applications were entered and completed in accordance with mandatory government guidelines. Additionally, the volume of work required that the TWAs in the call center work overtime. Also weighing in favor of overtime being an essential function, although not dispositive in itself, is the fact that Defendants judged overtime to be an essential function of the job; all TWAs worked overtime while Plaintiff was there, and all TWAs worked overtime before and after Plaintiff worked there. The Court notes that deposition testimony reveals that at times, certain employees, including Plaintiff, were given temporary exemptions from overtime due to medical conditions, but none of those were of indefinite duration. Similarly, the Court notes that although the TWA call center job description does not list overtime as an essential function of the position,

deposition testimony reveals that employees were advised during the application process that it would be a mandatory requirement.

On balance, the Court finds that Plaintiff has not created a genuine issue of material fact as to whether overtime was an essential function of the TWA position at the call center. The record clearly indicates that overtime was an essential job function. Therefore, because Plaintiff's restriction prevented her from working any overtime, Plaintiff was not capable of performing an essential function of her TWA call center position. Because overtime was an essential function of Plaintiff's TWA position, eliminating the requirement that she work overtime is not a reasonable accommodation for which Defendants were responsible. However, this does not end the Court's inquiry because Plaintiff claims that a reasonable accommodation was available by transfering her to another available position that did not require overtime.

ii.     Plaintiff's Transfer Requests

The second prong of the inquiry into whether Plaintiff was a qualified individual requires examining whether Plaintiff could perform the essential functions of her position with a reasonable accommodation. One accommodation Defendants state they offer, and which Plaintiff requested, was a transfer to a comparable position for which she was qualified and for which overtime was not an essential function.

Plaintiff argues that there were a number of available positions in the local field offices that did not require overtime and for which she was qualified. Plaintiff bears the burden of proof on this issue; however, the evidence she marshals in support of this argument is not sufficient to meet her burden. In support of her contentions, Plaintiff proffers the following evidence.

- She "had learned from co-workers that TWAs at the local field offices were not required to work overtime as part of their jobs, and that there were many open jobs in the local offices." (Dkt. # 22-2 ¶ 10.)

- That she was "interested in any available position because [she] wanted to work for the State and ultimately earn a retirement." (Id.)

- That Plaintiff "found a variety of positions that did not appear to require overtime at the UT Health Science Center and forwarded them via email to Mr. Garcia. Although these positions were not in the HSSC, [she] was aware that other HSSC employees had transferred between the Health Science Center and the HSSC." (Dkt. # 22-2 ¶ 11.)

- That Plaintiff "could not accept a job outside the San Antonio area, but that [she] was willing to accept jobs in the surrounding areas." (Dkt. # 22-2 ¶ 12.)

- On September 28, Garcia informed Plaintiff that her "request for accommodation was going to be closed because [her] current position

required overtime and no position that did not involve overtime had been located.  [She] found this to be very odd in light of what [she] knew about available positions."  (Id.)

- That she spoke with "HSSC Senior Trainer Kathleen Hauert outside of work, who suggested that [she] put in for a transfer to one of the other San Antonio offices because she understood the TWAs in these other offices were not required to work overtime.  [She] was aware that vacancies existed in these locations."  (Id. ¶ 12.)  Plaintiff made a formal written request for such a transfer in Nacogdoches, Schertz, or Salado Creek offices.  (Id.)  Plaintiff states that she was aware there were vacancies in these offices because co-workers had told her so and positions were listed online.  (Id.)

- Plaintiff has since spoken with other employees in the field offices who state that overtime is not really a requirement there.

- Plaintiff states she has spoken to one woman employed as a TWA in a San Antonio field office who "never works overtime."  (Id. ¶ 14.)  Plaintiff states she cannot provide this person's name because she was afraid of repercussions.  (Id.)

- Plaintiff presents the testimony of Sommer Green who states she worked overtime as a TWA, but that "[i]t was well known that employees at the field

offices either did not work overtime or worked very little overtime." (Dkt. # 22-19 ¶¶ 1–2.)

- Plaintiff presents the testimony of Debra Calvillo who states that she "personally has knowledge of a current Texas Works Advisor that has worked in a field office location since 2012 who is not required to work overtime. [She] cannot identify this individual for fear of retaliation against this person." (Dkt. # 22-20 ¶ 5.)

- Plaintiff applied for position # 55190 which was for a Medical Eligibility Specialist. (Id. ¶ 16.) Plaintiff claims the position did not state it required overtime, and she was qualified for it. (Id.) Plaintiff states she put this in her transfer request form. (Id.) Plaintiff claims Defendants never responded to her transfer requests. (Id. ¶ 17.)

- Defendants' agent stated that its policy was that if a disabled employee required a transfer as a form of reasonable accommodation, that employee should be awarded a vacant position for which he or she is qualified without having to compete for it. (Dkt. # 22 at 7.)

- There was a continuous posting for positions in the HHSC neighborhood offices. (Dkt. # 24-A ¶ 3.)

In contrast, in support of their argument that there were no positions to which Plaintiff could be transferred where she could perform the essential functions of the job, Defendants rely on the following:

- Human Resources representative Lonnie Bennett's testimony that there were no available positions in the San Antonio area that did not require employees to work overtime. (Dkt. # 22-6 at 3; Dkt. # 19-34 ¶ 3.) Bennett stated:

  "I was asked by Mr. Garcia to locate any vacant positions in the San Antonio area. Which is included in what HHSC has designated as Region 8, that were suitable to accommodate Ms. Gonzalez [sic] request for a transfer. It was my understanding that Ms. Gonzalez could not work more than 40 hours per week. I reviewed the vacant positions in the San Antonio area and determined that all were field operations positions. Based on my regular meetings with Grace Moser, the Regional Director for Eligibility Services in Region 8, I knew that these positions did not guarantee a 40-hour work week and they required overtime as needed."

- Testimony of Kassia Kay Welch, the program manager a Health and Human Services who supervised the four Women's Health Texas Works Advisors units. Plaintiff was employed in one of these units at the call center. Welch testified that (1) all TWAs in her units were required to work overtime ("Welch Dep.," Dkt. # 19-2 24:21–24); (2) all TWAs worked overtime during the relevant time period (Welch Dep. 32:22–24); and (3) that her understanding was that TWAs in the local field offices worked overtime because everyone was doing so (Welch Dep. 40:10–20).

- Testimony of Grace Moser that states that "all employees in field operations staff in the Texas Works program in Region 8, including Texas Works Advisors and Clerks, were required to perform overtime as needed to meet production goals and the needs of clients. No such employee in [Region 8] was permanently exempted from the requirement to be available to work overtime as needed." (Dkt. # 19–32 ¶ 3.) Region 8 encompasses San Antonio and the surrounding areas. (Id. ¶ 2.)

As a preliminary matter, Plaintiff challenges the testimony of Grace Moser because Defendants did not disclose her as a person with knowledge of relevant facts in their initial disclosures or otherwise. (Dkt. # 22 at 21.) Plaintiff claims she first learned of Moser during the deposition of Lonnie Bennett that occurred five days before the dispositive motion deadline and after discovery had closed. (Id.)

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, if a party fails to timely disclose or supplement disclosures, including the name of a witness as required under Rule 26(a), that witness's testimony must be excluded. Fed. R. Civ. P. 37(c). Here, Defendants did not disclose Moser until June 9, 2014, and have no legitimate explanation for their failure to do so. (Dkt. # 23 at 6.) The Court shall not rely on her declaration in evaluating the instant Motion for

Summary Judgment; however, the Court will reopen discovery solely to allow Plaintiff an opportunity to depose Grace Moser.

Plaintiff also objects to the introduction of a 2010 Memorandum that purportedly states that all Texas Works Advisors are required to work overtime. Plaintiff has failed to identify exactly to which document it refers. Therefore, this objection is overruled.

The Court finds that Plaintiff has presented no competent evidence that there were other Texas Works Advisor positions in the field offices that were available and did not require overtime. The declarations of Green and Calvillo present no more than hearsay, and the Court will not consider them. Additionally, Plaintiff's repeated statements that she was aware there were vacancies in the field offices and that the positions there did not require overtime are not competent summary judgment evidence. Mere hearsay is insufficient to create a genuine issue of material fact. Defendants have presented admissible evidence that these positions did require overtime in the form of Welch and Bennett's statements, and Plaintiff has presented nothing to refute this.

However, after reviewing the evidence and record, the Court finds that there is a genuine issue of material fact as to whether Plaintiff could have been transferred to a Medical Eligibility Specialist position, which did not require overtime, as a reasonable accommodation. Plaintiff requested transfer to the

position of Medical Eligibility Specialist in an email sent to Rex McNeil on October 5, 2014. (Dkt. # 22-15 at 2); that job description does not explicitly indicate that overtime is required. (Dkt. # 22-16.)

Because Defendants' own witness states that Plaintiff would not have to compete with other employees for an available position when requesting a transfer due to disability ("Garcia Dep.," Dkt. # 19-4 45:23–46:13) and because Defendants have not presented evidence that this specific open position required overtime, Plaintiff has shown that there is a genuine issue of material fact as to whether there were open positions for which she was qualified to which she could have been transferred as a reasonable accommodation. For these reasons, the Court **DENIES** Defendants' Motion for Summary Judgment.

Plaintiff has created a genuine issue of material fact only as to whether she was a qualified individual with a disability whom the Defendants failed to reasonably accommodate by transferring to the then-open Medical Eligibility Specialist position. Plaintiff has not met her burden of demonstrating that there was a genuine issue of material fact that she was a qualified individual who could perform the essential functions of her own position or that there were other positions to which she could be transferred that would constitute a reasonable accommodation. With these limitations, Plaintiff's claim has survived summary judgment.

<u>CONCLUSION</u>

For the reasons stated above, Defendants' Motion for Summary Judgment (Dkt. # 18) is **DENIED** as to Plaintiff's claim that Defendants failed to reasonably accommodate her by transferring her to the position of Medical Eligibility Specialist. Defendants' Motion to Strike (Dkt. # 26) is **GRANTED**.

IT IS SO ORDERED.

DATED: November 19, 2014, San Antonio, Texas.

_____
David Alan Ezra
Senior United States Distict Judge